INDEPENDENT SCHOOL DISTRICT OF BURLINGTON v. CITY OF BURLINGTON.

1. **Cities of the First Class:** SEWERAGE: STATUTE CONSTRUED. Upon consideration of the agreed statement of facts in this case, it was *held* that the defendant city had, prior to the passage of chapter 162, Laws of 1878, "commenced a general system of sewerage, by the levy and expenditure of a tax therefor, under the provisions of chapter 107, Acts Sixteenth General Assembly," and that, therefore, said city could not, under the first above named act, "provide by ordinance for the construction of sewers, * * * * * * * * and assess the cost upon adjacent property;" and an ordinance passed for that purpose was without authority of law, and void.

2. ———: ———: INVALID ORDINANCE: ATTEMPT TO LEGALIZE: CONSTITUTIONAL LAW. Such invalid ordinance was attempted to be legalized by chapter 60, Laws of 1882, but the legalizing act was *held* to be repugnant to that part of section 30, article 3, of the Constitution of Iowa, which provides that the general assembly shall not pass local or special laws, where a general law can be made applicable.

*Appeal from Des Moines Circuit Court.*

FRIDAY, MARCH 23.

THIS contest involves the power and authority of the defendant to order the cost of a sewer on Valley Street in said city, and along and in front of real estate owned by the plaintiff, to be paid by the owners of adjacent property. The question involved is whether the adjacent property owners shall be liable for the construction of the sewer, or whether it shall be paid by the levy and collection of a general tax for that purpose.

The plaintiff commenced the action by a petition for an injunction to restrain the city from collecting, or attempting to collect, the cost of the sewer, or any part of such cost, from the plaintiff. An answer was filed, and the cause was tried in the court below upon an agreed statement of facts, and the petition dismissed. Plaintiff appeals.

*John C. Power* and *Paul Guelick,* for appellant.

*A. M. Antrobus,* for appellee.

ROTHROCK, J.—I. The material facts in the case, as they appear in the agreed statement, are as follows: "In the years 1876–7–8–9 and 1880, the counsel of defendant, by proper ordinance, levied and collected a two mill tax on all the property in said city as a sewerage fund, with which it constructed what is known as the first Valley Street sewer, which was paid for out of the tax levied and collected as aforesaid. Said sewer is about one thousand feet in length, twelve feet in width, and seven feet in height, and empties into the Mississippi River, at a point where Valley Street terminated on the bank of said river.

1. CITIES of the first class : sewerage : statute construed.

"That what is known as Hawkeye Creek runs through the business portion of the city; that its course has been changed by defendant, so that it empties into the river about one-half mile further south than it originally did, which changes caused

it to overflow at times, causing damages to the adjoining property. That the first Valley Street sewer was constructed to relieve said creek from overflow when there was a large rain-fall, said sewer being connected with said creek in such a way as to receive a part of its water. That suit had been commenced against defendant to recover twenty thousand dollars damages, which it was claimed had resulted to the plaintiffs from the overflow of said creek and flooding their property. That other suits of a similar character were threatened, and would have been instituted, had not the plaintiffs in the cases above failed to recover. That the first Valley Street sewer was commenced during the pendency of said litigation.

"That at the time the council of defendant determined to build the first Valley Street sewer, it did not adopt any general plan or plats showing how or where the sewers of the city were to be constructed, and did not adopt such plan or plats till the adoption of the said ordinance of November 8, 1880. That the city never established a general plan of sewerage till the adoption of said ordinance of November, 1880. That which was done by the council is set forth in the proceedings of the council set out in the agreement. That the said plan of sewerage was devised by engineers employed by the defendant in the summer of 1880. That the first Valley Street sewer was commenced in 1877, and in 1877 a portion of the sewerage fund was expended in payment therefor, and was completed in 1878. That, under the plan adopted, said sewer is one of the main arteries from which radiates small sewers draining a large part of the city.

"That defendant adopted the ordinance of November 8, 1880, in relation to the assessing the cost of the construction of sewers to the adjacent property.

"That defendant adopted the resolution of June 19, 1882, directing the construction of a sewer along the street in front of plaintiff's property as charged in the petition, and unless restrained, will proceed and construct said sewer and collect

the cost thereof from the owners of adjacent property, including plaintiff.

"That on the 24th of December, 1877, the council of defendant adopted an ordinance appropriating out of the sewerage fund, for the construction of the Valley Street sewer, the following amounts: From the levy of 1877, $6,800; from the levy of 1878, $8,000; from the levy of 1879, $3,290."

It will be observed from the foregoing statement that what is called the first Valley Street sewer was built in 1877 and 1878, and that it was paid for by the assessment and collection of taxes upon all the property in the city. This was plainly authorized by chapter 107, of the laws of 1876. In 1878 an act was passed which provided, among other things, "that all cities of the first class in the State which have not commenced a general system of sewerage by the levy and expenditure of any tax therefor, under the provisions of chapter 107, acts of the Sixteenth General Assembly, may provide by ordinance for the construction of sewers, or may divide the city into sewerage districts in such manner as the council may determine, and pay the cost of constructing the same out of the general revenues of the city, or assess the cost upon adjacent property, etc."

In November, 1880, the city council of defendant passed an ordinance providing for assessing the cost of the construction of the sewers to the adjacent property, and thus sought to avail itself of the provisions of the last named act. The first question in the case is, did the provisions of chapter 162, of the Seventeenth General Assembly have any application to the city of Burlington. If the city had at the time of the passage of that law "commenced a general system of sewerage by the levy and expenditure of any tax therefor," it is clear that there was no authority in the law for changing the manner of procuring means for paying for the sewers from that provided for by the act of 1876. The facts show that the first Valley Street sewer is "one of the main arteries from which radiates small sewers draining a large part of the city."

It appears, then, that by its construction a general system was in fact commenced, and that over $20,000 was levied upon all the property of the city, and paid for its construction. The argument that the sewer thus built and paid for was intended to carry off surplus water from Hawkeye Creek, and that no general plan of sewerage was adopted prior to the passing of the acts of 1876, cannot avail the defendant. The fact remains, that all the property owners in the city were compelled to pay for the construction, and that it was the building of a main artery, without which there could have been no general system. The defendant belonged to the class which was excepted from the operation of the law of 1878, both by the letter and spirit of the act. The evident object of the exception was that those cities which had commenced a system of sewerage, and levied taxes upon all the property of the city, and expended the same, should not be permitted to change the mode of paying for further improvements, by requiring the adjacent property to pay the whole expense thereafter to be incurred.

II. By chapter 60 of the acts of 1882, an attempt was made to legalize the ordinance passed by the city council on the 8th day of November, 1880. That act contains the following provision: "That the action of said city council in passing the aforesaid ordinance be and the same is hereby legalized, and the said ordinance is hereby declared to be of the same force and effect as though no sewer tax had been levied by said city, prior to the passage of said act of 1878."

2. ——: ——:
invalid ordi-
nance: at-.
tempt to le-
galize: consti-
tutional law.

It is insisted that this act of the legislature is repugnant to that part of section 30, art. 3, of the constitution of this State, which provides that the general assembly shall not pass local or special laws where a general law can be made applicable. We think the position is well taken. Suppose that the act of 1878 had provided that the exception therein contained should not apply to the city of Burlington. There can be no question that the act would have been unconstitutional, be-

cause not general and uniform in its operation. Now this legalizing act is an attempt to do indirectly what cannot be done directly. · The act of 1878 conferred no power upon cities that had commenced a general system of sewerage, by the levy and collection of taxes, to change the mode of assessment and levy. Burlington belonged to that class; but, notwhitstanding the want of power, it passed an ordinance and attempted to proceed under the law of 1878. The legislature had no more constitutional power to legalize the ordinance than it would to specifically authorize it in the first instance, and at the same. time deny the same right or power to other cities similarly situated. The objection to the legalizing act is not going to the mere form of executing a power conferred, such as the want of sufficient notice required to be given for the incorporation of a village, or town, or school district, or the like; or a mere informality in the assessment or levy of a tax. The act purports to legalize an act of the city, which it had no lawful power to do; not in mere matter of form, but an act which must necessarily affect the rights of property owners in the city in a manner which, without the curative act, was wholly unauthorized.

We think the decision of the Circuit Court must be

