## SUPPLEMENT.

[These cases did not reach me in time to be published in their chronological order.—REPORTER.]

CONRAD YOUNGERMAN, Appellant, v. H. C. MURPHY, Treasurer of Polk County, *et al.*

**Waterworks Contract:** TAX LEVY MAY PRECEDE. Acts Twenty-sixth General Assembly, chapter 1, section 1, provides that all cities of the first class may levy a tax to create a sinking fund for the purchase or erection of waterworks, the proceeds of which shall be deposited at a rate of interest not less than four per cent. per annum, payable on demand. Section 3 provides that such cities may purchase or erect waterworks, and make and continue the levy until the price or cost is paid. Section 4 provides that cities levying such taxes may contract for the purchase or erection of works, and on the approval or adoption of such contract may apply the sinking fund on the cost thereof, and pledge the proceeds of the continuing levy to secure payment of the costs. *Held*, that such tax may be levied before the contract for the purchase or construction of the work is consummated or approved by the electors.

**Constitutional Law:** Acts Twenty-six General Assembly, chapter 1, authorizing the levy of taxes by cities in aid of the purchase or construction of waterworks, is not in contravention of constitution, article 7, section 7, providing that every law which imposes a tax shall distinctly state the tax and the object to which it is to be applied, and that it is not sufficient to refer to any other law to fix such tax or object; as the act itself does not impose the tax.

SAME. The authority conferred upon cities of the first class by acts Twenty-sixth General Assembly, chapter 1, to levy taxes in anticipation of the purchase or erection of waterworks is not unconstitutional upon the grounds that the object of the levy is uncertain and indeterminate although any contract for purchase or erection must be approved by the electors.

SAME. Such an act is not in violation of constitution, article 1, section 1, providing that all men have the inalienable right of acquiring, possessing, and protecting property and pursuing and obtaining safety and happiness.

*Courts.* Courts have the undoubted right to inquire into the object of a tax and to declare invalid all taxes that are levied for other than governmental purposes and a tax may be held invalid on account of some prohibition of the constitution, but the courts will not interfere unless it is clear that the legislature has exceeded its power.

*Appeal from Polk District Court.*—Hon. C. P. HOLMES, Judge.

FRIDAY, OCTOBER 7, 1898.

SUIT in equity to test the validity of chapter 1 of the Acts of the Twenty-sixth General Assembly, which authorizes the levy of a tax by municipalities in aid of the purchase or construction of waterworks, and to enjoin the collection of the tax levied by the city of Des Moines for the years 1896 and 1897 upon the plaintiff's property in virtue of the provisions of that act. The city of Des Moines intervened in the action, and in conjunction with the defendant filed a demurrer to the petition, which was submitted with a stipulation setting forth an ordinance under which the city acted in levying the tax. The trial court sustained the demurrer, and plaintiff appeals. —*Affirmed.*

*Bowen & Brockett* and *Cummins, Hewitt & Wright* for appellant.

*J. E. Mershon,* City Solicitor, *I. M. Earle,* and *W. H. Bailey* for appellees.

DEEMER, C. J.—The act in question authorizes cities of the first class to levy a tax of two mills upon the dollar upon all property within their corporate limits (except some classes not necessary to be mentioned) for the purpose of creating a sinking fund to be used as thereinafter provided for the purchase or erection of waterworks in such cities. The proceeds from the levy are to be deposited in one or more solvent banks or trust companies, payable on demand after sixty

days' notice in writing. Such cities are further authorized to purchase or erect waterworks under the provisions of the act, and to continue the levy until the purchase or cost incurred is paid. Cities levying the tax are authorized to contract for the purchase or erection of waterworks, and upon the approval and adoption of the contract are to apply the sinking fund upon the cost thereof, and are further empowered to pledge the proceeds of the continuing levy, the regular water levy, and the net revenue from the works to secure the payment of the purchase price, or of the cost of constructing the works. The contract for the purchase or construction of the works is not binding upon the city until approved by the mayor and a majority of the city council, and adopted by a majority of the electors at an election held for that purpose. Upon the approval of the contract the district court of the county is required to appoint waterworks trustees, who are invested with the power of carrying the contract into execution. These trustees are also authorized to fix water rates or rentals which shall be sufficient, together with the proceeds of taxes, for the maintenance of and operation of the works, the proper and necessary extensions thereof, repairs, and the payment of the original cost. There are many other incidental provisions which need not be set out, as enough has been stated to disclose the points at issue. Acting under this statute, the city of Des Moines proceeded to accept the provisions of the act, and to levy the two-mill tax without having actually entered into a contract for the purchase or construction of waterworks. The ordinance passed in virtue of the statute contains these provisions relating to the erection of such works:

"Sec. 4. That before proceeding to contract for the erection of a new system of waterworks the city council shall use reasonable efforts to purchase the system of waterworks operated by the Des Moines Waterworks Company at a price not exceeding the sum of eight hundred thousand dollars, and to that end shall submit to the owners thereof a proposition

for the purchase of said property, to be acted upon within a reasonable time to be determined by the city council. If said proposition be accepted or the purchase of said property be agreed upon, the terms of the agreement shall be embodied in a written contract properly executed by the owners of said waterworks and persons interested therein, and by the board of public works on behalf of the city, which contract shall be subject to approval by a majority of the council and the mayor and by the electors of said city.    *    *    *

"Sec. 5. If the city council shall be unable to purchase the waterworks of the Des Moines Waterworks Company as provided in section 4 hereof, or if the contracts provided for in section 4 shall not be approved by a majority of the electors voting at said special election, then the board of public works and the city engineer shall cause to be prepared, subject to the approval of the council, plans and specifications for a system of waterworks complete and adequate in its character, capacity, and efficiency for the needs of the city of Des Moines and its inhabitants. When such plans and specifications shall be prepared and approved by the city council the board of public works shall, in the manner provided by law, advertise for bids and enter into contract or contracts with the lowest bidder or bidders for the erection of such system of waterworks.    *    *    *"

The ordinance containing these provisions has never been submitted to the electors, and they have not expressed their wishes in the matter. Two propositions are relied upon by counsel for appellant: *First.* It is insisted that the city has no authority to levy the tax until its council has entered into a contract for the purchase or construction of waterworks and the electors have, in the manner provided by law, adopted such contract. For a proper solution of this question we must turn to the statute itself. The first section is general in terms, and provides that all cities of the first class may levy the tax for the purpose of creating a sinking fund for the purchase or erection of water-

works. It is to be noticed that all cities may do this; not cities which have entered into contracts for such purposes. It is true that the term "sinking fund" usually has reference to the payment of the principal or interest of a debt already contracted. 2 Bouvier Law Dictionary, 642; *Union Pac. Railroad Co. v. Buffalo County,* 9 Neb. 453 (4 N. W. Rep. 53); *Kelchum v. City of Buffalo,* 14 N. Y. 367. But the technical definition of a phrase will not control the manifest intent of the legislature. Section 3 of the act provides that such cities may purchase or erect waterworks, and may continue the levy until the purchase price or cost is fully paid or discharged. This clearly indicates that the tax may be levied before any contract is made, and that the city may continue the levy after the cost has been incurred. Section 4 prvides that cities levying such tax are authorized to contract for the purchase or erection of works, and upon the approval or adoption of such contract are authorized to apply the sinking fund upon the cost thereof, and to pledge the proceeds of the continuing levy to secure the payment of the purchase price or cost of constructing such works. Clearer words could hardly be used to express the thought that the levy is to or may precede the contract. It will be noted that cities levying the tax are authorized to so contract, and that they are to apply such sinking fund—that is, a fund already created—upon the cost thereof, and pledge the continuing levy as security for the remainder. Moreover, the first section of the act contemplates the deposit of the proceeds of the tax with a solvent bank or trust company at a rate of interest not less than four per cent. per annum, payable on demand, etc. If the tax may not be levied until a binding contract for the erection of waterworks is entered into, there would be no necessity for this provision. We are of opinion that, notwithstanding the interpretation usually given the phrase "sinking fund," the legislature intended to provide that the tax might be levied before a contract for the purchase or construction of the works was consummated.

Appellant contends, second, that, if this be the true interpretation of the act, it is unconstitutional, and in excess of legislative authority. This argument is based upon the postulate that a tax can only be levied for a certain and determinate object. The soundness of the proposition is conceded. But is it applicable to the facts of this case? Appellant frankly concedes that the business of furnishing water to a city and its people is a public business. With this concession before us, we look to see whether or not this is the object of the tax. The first section authorizes the levy for the purpose of creating a sinking fund for the purchase or erection of waterworks. This, then, is the object. That it is a public one is conceded. That it is fixed and certain is clear. But it is said that, as the electors may never authorize such works, or may never approve of the contract, the object is not public, and is not certain. In other words, the contention is that, as the electors have not decided to purchase or erect waterworks, the object is not certain, and no proper expenditure of the tax can be made. To quote counsel's language: "It (the city) must undertake the function before it becomes public in the sense that taxes can be collected to buy or build the property, and to operate it." This argument is largely bottomed upon chapters 11 and 26 of the Acts of the Twenty-second General Assembly, which provide that no waterworks shall be erected or authorized until a majority of the voters of the city or town by vote approve the same. This statute does not require that the proposition to establish waterworks be submitted to the electors before action by the city council. It is sufficient if the proposed action be submitted and approved by the electors. In other words, the council may first determine the kind and cost of the works to be erected, the amount of the tax to be levied, and other incidental matters, before submitting the matter to the voters. *Taylor v. McFadden,* 84 Iowa, 262. Aside from this, we are satisfied that the acts of the Twenty-second General Assembly, hereinbefore referred to, in so far as they are in conflict with the Acts of

the Twenty-sixth General Assembly under consideration, are
repealed by this last-named act.   Under this act the council
of a city of the first class which has levied the tax is author-
ized to contract for the purchase or erection of waterworks,
and the contract, when so made, is submitted to the electors
for approval.   See sections 4 and 5 of the act.   In the case
at bar the city has decided to avail itself of the benefits of the
statute, and has determined to purchase or erect waterworks.
This it had the right to do, because it had levied the tax
authorized by the act of the legislature in question.   We
have it, then, that the legislature has authorized the levy for
the purpose of purchasing or erecting waterworks,— a
definite and specific object,—and the city council of the city
of Des Moines has made the levy, and has decided to erect
or purchase such works.   True, the contract has not yet been
submitted to the electors, and when submitted it may not be
approved.   But, if not approved when so submitted, another
proposition may be formulated, which will receive the
approval of the voters.   Whether it is or not does not, we take
it, go to the validity of the act that has in view a specific object
which is confessedly lawful.   Such considerations are of great
moment in considering the policy or propriety of such legisla-
tion, but do not affect its validity.   The electors, do not, under
the new law determine the abstract question of waterworks or
no waterworks.   They simply approve or disprove of the
particular contract submitted to them.   The ultimate ques-
tion of the establishment of such works rests with the city
council.   The legislature might have authorized the levy and
conferred upon the city council full power to contract for
the purchase or erection of such works without submission to
the people.   Had it done so, we apprehend the act would not
have been questioned.   The mere fact that the contract, when
made, is to be submitted to the vote of the electors who are
directly interested, does not, it seems to us, invalidate the
tax.   Many taxes are levied in advance of a contract requir-
ing the expenditure of the money, and no one has ever called

such taxes in question.  If appellant's contention be sound, it is clear that none of these levies are valid, for the reason that those officials who are charged with the distribution of the money may never enter into any contracts which will call for the expenditure of the money so raised.  When the object for which the tax is levied is settled and fixed, and that object is found to be a proper and legitimate one, the validity of the tax is settled; and the mere fact that the money may not be immediately expended, or may perhaps never be expended, does not render the tax illegal, provided, of course, the money so raised cannot be used for any other purpose.  The act in question makes it a crime for any officer or member of the city council to participate in or advise the diversion of any part of the tax to any other purpose than that for which it was levied.  Counsel say that the act is in contravention of section 7 of article 7 of the constitution, which provides that "every law which imposes  *  *  *  a tax shall distinctly state the tax and the object to which it is to be applied, and it shall not be sufficient to refer to any other law to fix such tax or object."  Sufficient answer to this claim is found in the fact that the act itself does not impose a tax.  It authorizes certain cities to do so, and is a valid delegation of power to municipal bodies.  Moreover, if it did impose a tax, the amount thereof is fixed, and the object to which it is to be applied is certain.  Further claim is made that the act is in derogation of section 1 of article 1 of the constitution, to the effect that all men have the inalienable right of acquiring, possessing, and protecting property, and pursuing and obtaining safety and happiness.  This section is the basis of the argument we have hitherto considered with reference to the nature and object of the tax, and we need not repeat what we have heretofore said concerning this claim.  Courts have the undoubted right to inquire into the objects of a tax, and to declare invalid all taxes that are levied for other than governmental purposes; and it is no doubt true that a tax may be held

invalid on account of some implied prohibition of the constitution. *Maltby v. Railroad Co.* 52 Pa. St. 145; *Brodnax v. Groom,* 64 N. C. 244; *Morford v. Unger,* 8 Iowa, 82. And yet the court will not interfere unless it is clear that the legislature has exceeded its power. In Burrows on Taxation, at sections 10 and 13, it is said: "The power of the courts to declare void an act of the legislature in the absence of express constitutional limitations is an exceedingly delicate one, and should be exercised with the greatest caution; but of its existence there is no doubt." This is not such a clear case of excess of power as to justify us in interfering. Most of the arguments presented by appellant may well have been addressed to the legislature as a reason for not passing the act. The policy or expediency of such a measure is solely for the legislature. Courts interfere only when some provision of the fundamental law is violated, or when the act is clearly in violation of some implied prohibition of the constitution. The judgment of the district court is AFFIRMED.