LOUIS H. COOK, Trustee, Appellee, v. R. R. HANNAH et al.,
Appellants.

No. 45401.

APRIL 8, 1941.

MODIFIED AND REHEARING DENIED AUGUST 6, 1941.

John M. Rankin, Attorney General, John E. Mulroney, Assistant Attorney General, and Robert K. Brannon, County Attorney, for appellants.

Powers & Gilchrist and Kern & Faville, for appellee.

GARFIELD, J.—The taxes for which refunds are sought were paid by plaintiff-appellee's assignors for the years 1934, 1935, and 1936. These taxes were excessive because of the failure of the county auditor of Crawford county, in computing the tax rate, to deduct from the total budget requirements the tax to be derived from moneys and credits in compliance with section 7164, Code, 1935. See Hewitt & Sons v. Keller, 223 Iowa 1372, 275 N. W. 94. In 1934, section 7164 was amended to read as follows:

"Computation of rate. When the valuations for the several taxing districts shall have been adjusted by the several boards

for the current year, the county auditor shall thereupon apply such a rate, not exceeding the rate authorized by law, as will raise the amount required for such taxing district, and no larger amount.

"Provided that the county auditor shall, in computing the tax rate for any taxing district, deduct from the total budget requirements certified by any such district all of the tax to be derived from the moneys and credits and other moneyed capital taxed at a flat rate as provided in section 6985 and shall then apply such rate to the adjusted taxable value of the property in the district, necessary to raise the amount required after the deductions herein provided have been made."

The record before us shows that in only 13 counties did the auditor, in computing the tax rate for 1934, 1935, and 1936, deduct the tax to be derived from moneys and credits as required by the above section. In the remainder of the 99 counties, including Crawford, the auditor failed to make this deduction for one or more of the three years in question. Because of this failure taxes were collected in excessive amounts in more than 80 counties. In some of the counties where there was no compliance with section 7164, some refunds of the excesses were made. The record indicates, however, that in most of such counties no refunds were made.

The Forty-eighth General Assembly, after the decision of this court in Hewitt & Sons v. Keller, supra, attempted to legalize the taxes collected in all counties where the auditor did not comply with section 7164, by the passage of chapter 250, Acts of the Forty-eighth General Assembly, reading as follows:

"All taxes levied, assessed, or collected wherein the county auditor in computing the tax rate failed to deduct from the total budget requirements the tax to be derived from moneys and credits and other moneyed capital during the years 1934, 1935, 1936, and 1937, as defined by section seventy-one hundred sixty-four (7164) of the Code, are hereby declared legal and valid."

This legalizing act went into effect during the pendency of the present suit and was pleaded by appellant Board as a complete defense. By reply, appellee challenged the constitutionality of the act. The trial court held the legalizing act was not of

uniform operation in violation of the constitutional provisions hereinafter mentioned, that it therefore constituted no defense to appellee's suit and ordered the refunds. The Board of Supervisors has appealed. There is presented to us the single question of the constitutionality of the legalizing act.

■ I. The power to declare legislation unconstitutional is one which courts exercise with great caution, and only when such conclusion is unavoidable. State ex rel. Welsh v. Darling, 216 Iowa 553, 556, 246 N. W. 390, 88 A. L. R. 218; Hubbell v. Higgins, 148 Iowa 36, 47, 126 N. W. 914, Ann. Cas. 1912B, 822. And the presumption in favor of constitutionality is especially strong where the statute, like the one before us, was enacted to promote a public purpose, such, for example, as statutes relating to taxation. 16 C. J. S., page 275, section 99.

■ II. Appellee claims the act (chapter 250, Forty-eighth General Assembly) is unconstitutional in four respects. The principal contention is that it is not of uniform operation throughout the state, in violation of section 6, Article I, and section 30, Article III, of the state constitution. The trial court so held. Section 6, Article I, provides: "All laws of a general nature shall have a uniform operation". Section 30, Article III, provides: "The General Assembly shall not pass local or special laws in the following cases: For the assessment and collection of taxes * * * In all the cases above enumerated, * * * all laws shall be general, and of uniform operation throughout the State".

We do not understand appellee to contend that the act in question is a local or special law. Is it of uniform operation? That is the vital question. It may at once be conceded that the act does not operate alike upon all citizens of the state. This court has repeatedly held, however, that uniformity, in the constitutional sense, does not depend upon the number of citizens affected or within the scope of operation of the law in question. A large amount of legislation is not uniform in the extent of its application. Smith v. Thompson, 219 Iowa 888, 910, 258 N. W. 190; State ex. rel. Welsh v. Darling, supra (at page 559 of 216 Iowa, page 393 of 246 N. W.); McAunich v. Mississippi & M. R. Co., 20 Iowa 338, 343. If the law operates upon every person within the relation or circumstances provided for in the act, the requirement of uniformity is met.

It has been held more than once that a law is of uniform operation throughout the state even though at the time of its adoption its practical application is limited, for example, to a single municipality. See State ex rel. Welsh v. Darling, supra, and cases cited at page 559 of 216 Iowa, page 393 of 246 N. W. Compare State v. Des Moines, 96 Iowa 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381, where a law was held nonuniform because by no possibility could it ever apply to more than one city. In the Des Moines case, however, this court observed, page 526 of 96 Iowa, page 820 of 65 N. W., that "a law which at a given time operates as to only one bank, company, or society, because there is but one such, but is so framed as to operate *on the same conditions, when and where they arise* in the state, is a general law, and of uniform operation [citing cases]. This rule is one of general recognition." (Italics supplied.) Laws which are public in their objects may be confined to a particular class of persons if they are general in their application to the cases to which they apply, provided the distinction is not arbitrary but rests upon *some reason of public policy*. Hubbell v. Higgins, 148 Iowa 36, 39, 40, 126 N. W. 914, Ann. Cas. 1912B, 822. It is apparent that in passing the act before us the legislature was confronted with important questions of public policy, such, for example, as the raising by taxation of sufficient funds with which to make refunds and pay the considerable expense of computing the amounts to be refunded, and also the extensive litigation that would be apt to result if no curative act were adopted.

It is also well recognized that the legislature exercises a wide discretion in determining classifications to which its enactments shall be made applicable. State ex rel. Welsh v. Darling, supra, at page 556 of 216 Iowa, page 391 of 246 N. W.; Tolerton & W. Co. v. Iowa Board, 222 Iowa 908, 912, 270 N. W. 427, 429.

Appellee does not argue that the law is not uniform because of any language in the act itself. His entire argument is based on the facts (1) that in 13 of the 99 counties the auditor for the three years in question observed the requirement of section 7164 by deducting the moneys and credits tax while in the remaining counties this requirement was ignored for one or more of the three years, and (2) that in some few counties where excessive

amounts were collected, refunds were made to some taxpayers. If every county auditor in the state had failed to make the deduction for the years in question, and if no refunds had been granted by any of the counties, then there would be no basis whatever for appellee's claim of nonuniformity. His contention, in substance, is that a general curative act cannot be passed after advantages have accrued to some citizens before the passage of the act.

The act in question operated in the 80-odd counties where the auditor failed to comply with section 7164. We hold that the legislature had the power to pass this act, that it was of uniform operation in the constitutional sense and that the distinguished trial court erred in holding to the contrary. We think our conclusion is amply supported by prior decisions of this court.

In an early case, Boardman v. Beckwith, 18 Iowa 292, property had been sold in 1860 for nonpayment of taxes for 1858. No law was then in force authorizing the levy or collection of taxes for that year. The legislature in 1860 passed an act legalizing such unauthorized levies. The opinion does not disclose the number of counties in which such levies had been made. The act was held valid and of uniform operation throughout the state. The following observation made in the opinion has been quoted many times throughout the history of this court, page 294 of 18 Iowa:

"The power of the legislature to pass acts of this character, conducive as they are to the general welfare, and based upon considerations of controlling public necessity, is, in our opinion, undoubted."

In Von Phul v. Hammer, 29 Iowa 222, it appeared that by the original charter of Newton, no authority was given to levy a sidewalk tax. Under a subsequent act of the legislature, the town amended its charter to include such authority. It was claimed the act violated section 30, Article III, of the state constitution but its validity was upheld. The court makes the following pertinent pronouncement which is a complete answer to appellee's contention, pages 223 and 224 of 29 Iowa:

"It is quite true, however, that by the enactment of that section, which is a general law of uniform operation, there may result *a consequence*, to wit, a want of uniformity of city charters, which was one of the evils that the particular clause of the constitution under consideration was designed to remedy. But the clause itself is not, nor can it by any fair construction be made to be, so far-reaching as to prevent such consequences. For instance, under the general incorporation law for cities and towns * * * the same power of taxation * * * is given alike to all cities of the same class. But it is quite probable that no two cities in the state exercise the power in precisely the same manner. Each provides by its own ordinances the manner in which it will exercise the power. And surely it cannot be claimed that all such laws and ordinances are void, under article 3, section 30, for want of uniformity. Many other illustrations might be given, but they are unnecessary." (Italics supplied.)

Haskel v. Burlington, 30 Iowa 232, although decided in 1870, is another leading case in this state. Special charter cities, of which Burlington was one, had no power to sell lands for delinquent taxes. A statute was enacted under which the city claimed that right as to taxes delinquent at the time of its passage. It was contended the statute, because it applied only to special charter cities, was not of uniform operation in violation of the same constitutional provisions which appellee now seeks to invoke. The court held otherwise, saying at pages 236 and 237 of 30 Iowa:

"As such [special charter] cities were few, at the time of the passage of this act, and hence but few cities were affected by its provisions, it is claimed that the statute is local and special, and has not a uniform operation throughout the State. This position is believed to be unsound. * * *

"So that wherever cities are found, in whatever portion of the State, be they few or many, which were incorporated under special charters, to them the law applies. And it applies to *all cities* in the State falling within the class specified, and, hence, is not local nor special, but of uniform operation."

Iowa Railroad Land Co. v. Soper, 39 Iowa 112, is probably the leading case in Iowa on the question under consideration. Certain taxing bodies, including the board of supervisors of Carroll county, had levied a tax to pay certain judgments against them. This court had held the judgment taxes were illegal because in excess of the maximum authorized by law. A taxpayer brought mandamus against Carroll county for the refund of the taxes. The county pleaded a legalizing act similar to the one now before us. The act was held constitutional and of uniform operation throughout the state even though a comparatively few taxing bodies had levied and collected the excessive taxes and the legalizing act was operative only in those taxing districts. The court followed the earlier cases above mentioned in holding that the curative statute operated upon a particular condition, that is, in all taxing districts where before the passage of the act there had been levied special judgment taxes in excess of the maximum allowed by law. In those districts, the consequences named in the act followed, namely, such taxes were legalized and validated. The law was held general, not because it operated uniformly upon every person in the state, because clearly it did not, but because it was uniform in its operation upon all persons in the taxing districts where the excessive levy had been exacted. The court says at page 116 of 39 Iowa:

"It is very clear that if every municipal corporation within the State had levied taxes to pay judgments, which levies had been in excess of the maximum amount fixed by law, the act under consideration would have applied to them all alike. In other words, if the condition described in the act had existed in every corporation in the State, the act would have been applicable to them all."

In Chicago, R.I.&P.Ry.Co. v. Independent District of Avoca, 99 Iowa 556, 68 N. W. 881, the Avoca school district and four other school districts in the state levied school taxes which were void under a decision of this court because not made within the time fixed by statute. The railroad sought to recover the taxes

paid to the Avoca district. The district pleaded a curative act applicable to it but not to the other four districts. The constitutionality of the act was upheld. We cite this decision as indicative of the extent to which this court has gone to sustain legalizing acts.

The above cases are early ones. None of them, however, is an isolated decision; they have all been repeatedly cited with approval by this court even in very late pronouncements. There are three recent cases in Iowa which to our minds present practically the identical situation, at least on principle, to that now before us. An emergency tax levy made in some but not all counties of the state had been held illegal because of a defective title of the authorizing statute, known as the local budget law. (See Chicago, R.I.&P.Ry.Co v. Streepy, 207 Iowa 851, 224 N. W. 41.) A few days after this court decision the legislature passed an act legalizing the tax in the counties where it had been exacted. It was strenuously contended that the act was invalid on the identical grounds now urged upon us by appellee. In two decisions of this court, after a review of earlier cases including Haskel v. Burlington and Iowa Railroad Land Co. v. Soper, the curative act was upheld. See Chicago, R.I.&P.Ry.Co. v. Streepy, 211 Iowa 1334, 236 N. W. 24, and Chicago, R.I.&P.Ry. Co. v. Rosenbaum, 212 Iowa 227, 231 N. W. 646. In the Rosenbaum case the court says, at pages 236 and 238 of 212 Iowa, pages 650 and 651 of 231 N. W.:

"The legalizing act has no effect whatever, except upon some municipality as defined by the Budget Law, which had made an assessment and levy under color of authority derived from Section 373 of the Code. * * * There is no lack of uniformity in its operation. It has been the universal holdings of this court that a statute of this kind and character is not violative of the aforesaid sections of the Constitution. See Boardman v. Beckwith, 18 Iowa 292; Iowa Railroad Land Co. v. Soper, 39 Iowa 112."

Counsel for appellee in both oral and written argument made strenuous efforts to distinguish the above decisions, particularly the Iowa Railroad Land Company case in 39 Iowa and the Rock

Island Railroad cases in 211 and 212 Iowa, 236 and 231 N. W. The argument is that the illegality in those cases was in the levy of the tax by taxing bodies rather than in the computation of a tax rate by such a ministerial officer as the county auditor—that the legislature can legalize excessive levies by taxing bodies because it could have authorized such levies in the first instance, but is powerless to cure the error of county auditors in computing a higher tax rate than authorized by law.

Of course, it is true that a legalizing statute can cure only such action as the legislature could have authorized. Nevertheless, we cannot agree that counsel's attempt to distinguish the above decisions is sound. What counsel overlook is that the act in question operates with fully as much uniformity throughout the state as did the acts held valid in the Iowa Railroad Land Company and Rock Island Railroad cases. It is true the act now before us does not attempt to legalize an excessive levy made by a taxing body, but a mistake of the auditor in computing the tax rate. But the legislature has just as much power to prescribe the method by which auditors are to compute tax rates as to authorize taxing bodies to make levies. Let us assume that the taxpayers of Crawford county by reason of the failure of the auditor to deduct moneys and credits tax in computing the tax rate for 1936 paid in excessive amounts totaling $5,000. Now let us assume that the Board of Supervisors had made an excessive levy of $5,000 for some purpose not authorized by law. Appellee concedes, as indeed he must under the decisions above referred to, that the excessive levy could be legalized, even though as a consequence taxpayers of Crawford county would be forced to pay a higher tax than in some county where the excessive levy had not been made. It seems to us that the practical effect of collecting $5,000 because of an excess levy and collecting $5,000 excess because of the failure of the auditor properly to compute the tax rate is identical. Also, that the results of curative acts curing the two forms of illegality are identical *so far as uniformity of operation is concerned.*

We have given careful consideration to the authorities cited by appellee in support of his claim of nonuniformity in the operation of the act under consideration. None of them is in

point nor has but remote application to the present controversy. Only two of the Iowa cases cited by appellee anywhere in his briefs involve curative acts: Independent School Dist. v. Burlington, 60 Iowa 500, 15 N. W. 295, and Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 91 N. W. 1081. In each of these two cases the city had enacted an illegal ordinance. The legislature attempted by *a local or special law*, which did not profess to be of uniform operation throughout the state, to cure this illegality. The court in each case rightly held that the law was invalid as a local or special law. It was not necessary in either case to consider the question whether the act was of uniform operation throughout the state. The distinction between such cases and a case involving a general statute enacted in the public interest, such as the one now before us, is readily apparent.

III. The findings of the trial court indicate that the principal ground on which it held the act unconstitutional is that it was nonuniform in operation. Appellee contends, however, the act violated the constitution in three other respects. The second attack upon the act is that it is in effect a delegation by ratification to county auditors of the legislative power of levying taxes in violation of section 1, Article III, of the state constitution pertaining to distribution of powers between the three branches of government. It is to be noted that this contention is somewhat inconsistent with appellee's argument that the type of illegality sought to be cured by the present act differs from that involved in the decisions reviewed in the preceding division of this opinion. His claim at this point is that what really resulted from the error of the auditors was an illegal tax levy which he concedes, in an attempt to avoid the force of our own decisions, the legislature had the power to cure.

The attorney general concedes that tax levying, which is legislative, cannot be delegated to county auditors. We do not agree that a legalizing act amounts to a delegation of the power of taxation to a county auditor merely because it places its stamp of approval on the erroneous action of more than 80 county auditors of the state in the computation of the tax rate. Undoubtedly, as we have previously observed, the legislature has the power from time to time by general statute to change the method to be

used by county auditors in computing tax rates. Indeed, the legislature by amending section 7164 changed the existing method of computing the rate by providing for the deduction of the tax on moneys and credits. It was the violation of this prescribed method that led to the curative enactment. It is elementary that "A curative act may cure or legalize any act which the general assembly could, as an original question, have authorized." Chicago, R.I.&P.Ry.Co. v. Rosenbaum, 212 Iowa 227, 231, 231 N. W. 646, 648. Since the legislature has the power in the first instance to provide for the method of computing tax rates by auditors, after the lawful method had been ignored and an erroneous computation used, it had the power to legalize such error by the enactment now before us.

IV. It is next contended that the curative act amounts to a denial of the equal protection of the laws and grants to citizens in the counties where the auditor made the required deduction for moneys and credits, and in counties where refunds were made, privileges and immunities which were denied to taxpayers in the counties in which the curative act was operative and no refunds were made, in violation of section 1 of the fourteenth amendment to the federal constitution and section 6, Article I, of the state constitution. Appellee cites but two Iowa cases (along with one case from another jurisdiction) in support of this contention: State v. Garbroski, 111 Iowa 496, 82 N. W. 959, 56 L. R. A. 570, 82 Am. St. Rep. 524; and Hubbell v. Higgins, 148 Iowa 36, 126 N. W. 914, Ann. Cas. 1912B, 822. Neither of these cases is applicable to the present controversy. They both involve the reasonableness of legislative classification, the Garbroski case holding such classification was unreasonable, and the Hubbell case upholding the classification there made by the legislature.

The argument in support of this attack is practically the same as the argument in support of appellee's claim that the act is not of uniform operation. What we have said on the subject of uniformity and the authorities discussed in division II of this opinion sufficiently answer this contention. If the legislature had the right, as we hold it did, to enact this statute which was applicable in all of the 80-some counties where there

was no compliance with the law in computing the tax rate, no taxpayer in any of those counties can be heard to complain because of claimed denial of privileges or immunities or equal protection of the law.

V. Appellee's remaining claim of unconstitutionality is that the act violates section 7, Article VII, of the state constitution which requires that every law which imposes, continues, or revives a tax must distinctly state the tax and the object to which it is to be applied and it shall not be sufficient to refer to any other law to fix such tax or object. The basis for the argument in support of this contention is that the obvious effect of chapter 250, Acts of the Forty-eighth General Assembly, is an attempt to levy a tax. It is substantially the same argument that is made in support of the somewhat inconsistent claim that it constitutes a delegation to the county auditor of the power to levy a tax. This question was passed on contrary to appellee's contention in Chicago, R.I.&P.Ry.Co. v. Rosenbaum, supra. The court there recognizes under the authority of Youngerman v. Murphy, 107 Iowa 686, 76 N. W. 648, and Fevold v. Board of Supervisors, 202 Iowa 1019, 210 N. W. 139, that a statute which merely delegates to taxing bodies the power to tax but which does not itself impose the tax is not such as comes within the meaning of this section of the constitution. (See page 235 of 212 Iowa, page 649 of 231 N. W.) The court squarely rejects the contention that the legalizing act there under consideration, which was very similar to the one now before us, imposed, continued, or revived a tax. While we are not to be understood as holding that the act in question delegated the power to tax, we do hold that it did not impose, continue, or revive a tax, and therefore this constitutional provision is not applicable.

Some other questions have been argued. We have given them all careful consideration. The foregoing is determinative of the case. We are unable to find that chapter 250, Acts of the Forty-eighth General Assembly, is such a clear and palpable violation of the constitutional provisions upon which appellee relies that we can conscientiously hold it to be invalid. Since our conclusion is contrary to that reached by the trial court, the judgment is reversed.—Reversed.

HALE, C. J., and MITCHELL, SAGER, BLISS, and OLIVER, JJ., concur.

MILLER, STIGER, and WENNERSTRUM, JJ., dissent.

MILLER, J. (dissenting)—The sole question presented by this appeal is that of the constitutionality of chapter 250 of the Acts of the Forty-eighth General Assembly, section 1 of which provides as follows:

"All taxes levied, assessed, or collected wherein the county auditor in computing the tax rate failed to deduct from the total budget requirements the tax to be derived from moneys and credits and other moneyed capital during the years 1934, 1935, 1936 and 1937, as defined by section seventy-one hundred sixty-four (7164) of the Code, are hereby declared legal and valid."

Section 7164 of the Code, 1935, provides as follows:

"When the valuations for the several taxing districts shall have been adjusted by the several boards for the current year, the county auditor shall thereupon apply such a rate, not exceeding the rate authorized by law, as will raise the amount required for such taxing district, and no larger amount.  ·

"Provided that the county auditor shall, in computing the tax rate for any taxing district, deduct from the total budget requirements certified by any such district all of the tax to be derived from the moneys and credits and other moneyed capital taxed at a flat rate as provided in section 6985 and shall then apply such rate to the adjusted taxable value of the property in the district, necessary to raise the amount required after the deductions herein provided have been made."

In Hewitt & Sons v. Keller, 223 Iowa 1372, 275 N. W. 94, this court held that, when a county auditor fails to comply with the requirements of the second paragraph of section 7164 of the Code, 1935, above quoted, the taxpayer can maintain an action in mandamus to compel a refund of the difference between the amount actually paid and the amount which should have been paid had the county auditor complied with the statute. Under

the record herein and the law as announced by us in Hewitt & Sons v. Keller, supra, the plaintiff is entitled to recover unless such right has been destroyed by the enactment of chapter 250 of the Acts of the Forty-eighth General Assembly. It is apparent that, if said chapter 250 is constitutional, the cause of action, which plaintiff had before its enactment, was destroyed. Hence it is that the only question, presented by this appeal, is that of the constitutionality of said statute. This is conceded by both parties to this appeal.

Appellee asserts that said statute is invalid because it violates sections 1, 6 and 9 of Article I, section 30 of Article III, and section 7 of Article VII of the Constitution of the State of Iowa and the fourteenth amendment to the Constitution of the United States.

The facts, pertaining to the constitutional questions herein, were stipulated. They are reviewed by the trial court as follows:

"The record as made in this case establishes that in a few counties of the state the law relative to the assessment and collection of the taxes in question had been complied with. In several of the counties there was a failure to make deductions of moneys and credits for one or more of the years involved; there were counties where the law was complied with in one or more of the years and not complied with in others; refunds were made in some of the counties to taxpayers who filed claims or were judicially determined entitled to them; in some counties where refunds were allowed before the curative act went into effect, denials of refunds have since been made. There are cases where a taxpayer owned land in counties where refunds in part have been made as well as in counties where refunds have been denied."

In holding that the statute is invalid, for the reasons asserted by appellee, the court states:

"Violations of the law with respect to deducting moneys and credits from the budget requirements have therefore resulted in the imposition of higher taxation in many of the taxpaying districts of the state than in the districts where the law was in fact complied with.

"It seems to the Court that to sustain the act of the legislature in its undertaking to legalize and validate the taxes in question necessarily does violence to the principle of uniformity which under our law is essential to legal taxation. The legislature can do, through the instrumentality of a curative act, no more than it could do by original enactment. An original legislative act imposing the unequal non-uniform taxation throughout the state necessary to bring about the conflicting situation now existing would, in the judgment of this court, be invalid. The legalizing act seeking to make valid the illegal and unequal taxes imposed is likewise invalid. The legalizing act makes no attempt to equalize the inequalities of taxation and place the taxpayers on a common level, but its purpose is to declare valid the unlawful collection of taxes imposed on certain taxpayers, whereas other taxpayers similarly situated are not subjected to such illegal tax.

"This court is satisfied that the act in question cannot be held to have legalized and made valid the taxes in question, and the plaintiff's contention as to the invalidity of the act as stated in plaintiff's petition is, and will be, sustained on the grounds therein stated."

I think that the position taken by the trial court is right. In stating my reasons for such conclusion, it seems desirable to first consider certain fundamental principles applicable to legalizing acts.

The power of the legislature to adopt a legalizing act is concisely stated in the case of Chicago, R. I. & P. Ry. Co. v. Rosenbaum, 212 Iowa 227, 231, 231 N. W. 646, 648, as follows: "A curative act may cure or legalize any act which the general assembly could, as an original question, have authorized." This rule has been repeatedly recognized and applied. The following cases are illustrative: Fair v. Buss, 117 Iowa 164, 167, 90 N. W. 527; Witter v. Polk Board, 112 Iowa 380, 391, 83 N. W. 1041; Windsor v. Des Moines, 101 Iowa 343, 348, 70 N. W. 214; Clinton v. Walliker, 98 Iowa 655, 660, 68 N. W. 431; Richman v. Board, 77 Iowa 513, 519, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308.

The corollary to the above rule is also true. The legislature may not accomplish, through a legalizing act, that which it could

not authorize originally; it cannot do indirectly that which it cannot do directly. Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 242, 91 N. W. 1081; Independent School Dist. v. Burlington, 60 Iowa 500, 504, 15 N. W. 295.

It is also fundamental that, where a result might be originally accomplished by a local or special law, that result may also be accomplished through a legalizing act which is a local or special law. The following cases are illustrative of this rule: Iowa Electric L. & P. Co. v. Grand Junction, 221 Iowa 441, 448, 264 N. W. 84; McSurely v. McGrew, 140 Iowa 163, 176, 118 N. W. 415, 132 Am. St. Rep. 248; McCain v. Des Moines, 128 Iowa 331, 333, 103 N. W. 979; Chicago, R. I. & P. Ry. Co. v. Independent Dist., 99 Iowa 556, 563, 68 N. W. 881; Independent Dist. v. Independent Dist., 62 Iowa 616, 619, 17 N. W. 895; State v. Squires, 26 Iowa 340; McMillen v. County Judge, 6 Iowa 391, 394.

The corollary to the rule just stated is also true. Where the result to be accomplished would require a general law in the first instance, a legalizing act, which undertakes to accomplish that result, must be a general law, of uniform application throughout the state. Chicago, R. I. & P. Ry. Co. v. Rosenbaum, supra; Cedar Rapids Water Co. v. Cedar Rapids, supra; Stange v. Dubuque, 62 Iowa 303, 305, 17 N. W. 518; Independent School Dist. v. Burlington, supra; Iowa Railroad Land Co. v. Soper, 39 Iowa 112; Boardman v. Beckwith, 18 Iowa 292.

The taxes involved here include those for state and county purposes. Section 30, Article III, of the Constitution of Iowa provides as follows:

''The General Assembly shall not pass local or special laws in the following cases: For the assessment and collection of taxes for State, County, or road purposes; * * * In all the cases above enumerated, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State * * *''

The result to be accomplished by chapter 250 of the Acts of the Forty-eighth General Assembly was one which could be accomplished, if at all, only by a general law, of uniform opera-

tion throughout the state. Warren v. Henly, 31 Iowa 31, 39; Dubuque v. Illinois Central Ry. Co., 39 Iowa 56; Herriott v. Potter, 115 Iowa 648, 652, 89 N. W. 91.

In determining whether or not the trial court was right in holding that chapter 250 of the Acts of the Forty-eighth General Assembly is unconstitutional we are not concerned with the rules applicable to most legalizing acts, which are, and properly so, local or special laws. We are concerned solely with the rules applicable to legalizing acts, which, because of the result which they seek to accomplish, must be general laws of uniform operation throughout the state.

Under the record herein, the trial court was clearly right in finding and determining that the result, which chapter 250 of the Acts of the Forty-eighth General Assembly seeks to accomplish, is an unequal and nonuniform plan of taxation.

The fact that the inequality results from a difference in the tax rates between counties does not avoid the vice of inequality from a constitutional standpoint. In the case of State v. Meek, 127 Ark. 349, 357, 192 S. W. 202, 205, L. R. A. 1918F 642, the court states as follows:

"Now, the constitutional guaranty with respect to uniformity is not restricted to county lines, for the express declaration is that the valuations shall be 'equal and uniform throughout the state.' Therefore when this court held in the case just cited that a taxpayer had the right to compel the reduction of his assessments to conform to the assessments of other property in the county, it necessarily follows therefrom that the citizens of one county are entitled to the same remedy to compel such reduction as would afford equality and uniformity with assessments of property in other counties in the state."

Appellants contend that the existence of inequality is immaterial because the law is general in its terms and operates uniformly on all that are affected thereby, relying upon our holding in Iowa Railroad Land Co. v. Soper, 39 Iowa 112, 115, wherein we state:

"In this case the act of the General Assembly operated upon a particular condition; that is, in all municipal corporations

where they have, before the passage of the act, levied special taxes in excess of the maximum allowed by law to pay judgments, the consequences which are named in the act follow, namely, such taxes are declared legal and valid. As in Haskel v. The City of Burlington, supra, the act applied 'to *all cities* in the State falling within the class specified, and hence was not local nor special, but of uniform operation.' So, in this case, the act applies to all 'counties, school districts, or other municipal corporations,' falling within the conditions mentioned in the act; and it is, therefore, not a local or special law, but general.''

Appellants also rely upon similar pronouncements in Chicago, R. I. & P. Ry. Co. v. Streepy, 211 Iowa 1334, 236 N. W. 24, and in Chicago, R. I. & P. Ry. Co. v. Rosenbaum, supra. But in none of those cases was there any inequality in the plan of taxation.

In the Soper case, certain judgments had been recovered against various municipal corporations which had levied taxes to pay the same, only to find that they had no authority to levy the taxes. The legislature legalized such levies. The classification, under which the law operated, was a proper one. No inequality between taxpayers, similarly situated, resulted. There was no violation of the constitution in that regard.

In the Streepy case, certain taxes had been levied under authority of section 64, chapter .4, Acts of the Fortieth General Assembly, Extra Session. In Chicago, R. I. & P. Ry. Co. v. Streepy, 207 Iowa 851, 224 N. W. 41, this court held that the statute was invalid because of a defective title. The legislature then enacted chapter 396 of the Acts of the Forty-third General Assembly, which legalized the levies made under section 64, chapter 4, of the Acts of the Fortieth General Assembly, Extra Session. There was no inequality in the plan of taxation thus legalized. In the Rosenbaum case, the decision was prior to that in the second Streepy case and involved the same legalizing act.

By reason of the foregoing, it readily appears that the cases, upon which appellants rely, are not in point. They are made controlling here only by giving to them an effect which was not intended and which is contrary to decisions of this court that appear to be controlling here.

Appellants contend that the Soper case, considered with the Streepy and Rosenbaum cases, establishes the principle that, if a legalizing act is general in its terms and appears to operate uniformly upon all persons specified as falling within the conditions of the act, the constitutional requirement of uniformity is met regardless of the facts. The rule, as stated in such cases, was proper when applied to the facts of each case. But it is an entirely different thing to say that the rule applies irrespective of the facts of a particular case.

An illustrative case is that of State ex rel. West v. City of Des Moines, 96 Iowa 521, 527, 65 N. W. 818, 820, 31 L. R. A. 186, 59 Am. St. Rep. 381, wherein we held that a statute, which stated that it applied only to cities having a population of thirty thousand by the census of 1885 and which actually applied only to the city of Des Moines, was not a general law. We there state:

"Had the act in question been made applicable to all cities of over thirty thousand inhabitants, without a qualification that, under known facts, would exclude its operation as to any other such city, the case would be different. * * * The act is singularly specific in this respect, not even permitting any chances as to what might be the actual population of other cities but making it dependent on the census return of 1885, known at the time the act was passed, which clearly proves that only the city of Des Moines was intended as the subject of such legislation. In such a case, *even though the language of the act is general, it is special legislation.*" (Italics supplied.)

Under the rule, contended for by appellants, the above quotation is an erroneous statement of the law. I am satisfied that the court was right in the pronouncement above quoted and that it is the appellants that are in error. The mere fact that the language of the statute may be in general terms does not make it a general law if in fact it is not.

Section 30 of Article III of the Constitution of Iowa not only requires that the act be general, but also that it be "of uniform operation throughout the State." As above pointed out, even though a statute may appear to be general according to its terms, the facts may demonstrate that it is not general. When as

a matter of fact it is not a general law, it is our duty to so hold, irrespective of the appearance of the law from its terms. This same rule obviously applies to the requirement that the act be of "uniform operation throughout the State". Even though from its terms it appears to operate uniformly, if as a matter of fact it does not, then the constitutional requirement has not been met.

It is important to note that chapter 250 of the Acts of the Forty-eighth General Assembly does not affect the application of section 7164 in those counties where the law was complied with. As to such counties, the general law remains in full force and effect. The levies there made were and continue to be legal. It is only in those counties where the auditor violated section 7164 that said chapter 250 undertakes to release the auditor from the requirements of section 7164. The situation is directly analogous to that presented in the cases of Cedar Rapids Water Co. v. Cedar Rapids, supra, and Independent School Dist. v. Burlington, supra. In the Cedar Rapids case, we state (118 Iowa at 242, 91 N. W. at 1084) as follows:

"But, the effect of the legalizing act under consideration, in so far as it is applicable to the grant of a franchise beyond the limit of twenty-five years, is no more or less than an attempt to except or release the city of Cedar Rapids from the operation of a general statute which remains in full force against all other municipalities of the state, and thus accomplish by the device of a legalizing act that which the legislature could not do by direct enactment. This, we have already held cannot be done. Independent School Dist. v. City of Burlington, 60 Iowa, 500; Stange v. City of Dubuque, 62 Iowa, 304."

In the Burlington case, we state (60 Iowa at page 504, 15 N. W. at page 297) as follows:

"It is insisted that this act of the legislature is repugnant to that part of section 30, art. 3, of the constitution of this State, which provides that the general assembly shall not pass local or special laws where a general law can be made applicable. We think the position is well taken. Suppose that the act of 1878 had provided that the exception therein contained should not

apply to the city of Burlington. There can be no question that the act would have been unconstitutional, because not general and uniform in its operation. Now this legalizing act is an attempt to do indirectly what cannot be done directly.''

In determining whether a tax statute operates uniformly throughout the state, we do not look to the individual taxes but rather to the principle or plan of taxation. This rule is well stated in the case of Herriott v. Potter, supra (115 Iowa at page 652, 89 N. W. at page 93) as follows:

''Section 30, art. 3, of the constitution, requires that all laws for the assessment and collection of taxes for state, county, and road purposes shall be general and of uniform operation throughout the state. This refers to the principle or plan of taxation, and not to specific taxes. 'It means that all individuals and all classes shall be uniformly taxed.' A different tax may not be exacted from one person than from another, unless differently situated; nor from a designated group of persons than from another, unless difference in condition or relation or situation suggest and justify such difference. Nor may different burdens be imposed on property of the same kind in like situation. Otherwise the rule of uniformity exacted by the constitution would be destroyed. 'The rule means that all individuals and all classes must contribute uniformly with like individuals and like classes to the burden of taxation.' Warren v. Henly, 31 Iowa, 31.''

When the legislature undertakes to establish a plan of taxation by which one rule applies in certain counties and a different rule in other counties of the state, the principle or plan of taxation thereby developed is not of ''uniform operation throughout the State''. As stated by the trial court, if the legislature had attempted originally to provide for such an unequal and non-uniform principle of taxation, the legislature would obviously violate section 30, Article III, of the constitution. The legislature cannot accomplish by a legalizing act that which it could not authorize in the first instance. It cannot do indirectly that which is prohibited by direct action.

It is suggested that the legislature may have presumed that all county auditors had violated the provisions of section 7164

and, therefore, that the law would operate uniformly. We cannot indulge in any such presumption. In the case of State v. Meek, supra, the court states (127 Ark. at page 358, 192 S. W. at page 206), as follows:

"No presumption can be indulged that all of the public officials of the state in the various counties who have to do with the assessments of property for taxation will knowingly violate the duties imposed upon them by law."

The record shows that some county auditors did violate the law. The legalizing act demonstrates that the legislature knew that some violations had occurred. The record shows that some county auditors obeyed the law. The only presumption we can indulge in is that the legislature assumed the facts to be as they were, some county auditors violated the law while others obeyed it. The legalizing act, therefore, must be given the effect which the facts show it produced.

As a result, there is a plan of taxation which is unequal and nonuniform. Such inequality and nonuniformity cannot be justified upon any theory heretofore established by this court. Suppose said chapter 250 had specified by name the counties in which the auditor violated section 7164 and had provided that, as to such named counties, section 7164 should not apply for the years 1934, 1935, 1936 and 1937, but, as to all other counties, section 7164 should be valid and binding for those years. Could anyone contend that such a plan of taxation would be of uniform operation throughout the state? But the legislature cannot do indirectly that which it cannot do directly.

The situation herein differs from that presented in the Soper, Streepy and Rosenbaum cases. In those three cases, the legalizing act applied to all counties where the taxes were levied. The plan of taxation was of uniform operation throughout the state. Here taxes were levied in every county of the state. The legalizing act seeks to establish one law for some counties and a different law for other counties. If such an unequal and nonuniform plan of taxation is to be sustained, many foreboding evils might result. They are the very type of evils which the constitution seeks to prevent. The constitution is the supreme

law of the land. Where legislation fails to conform to the limitations therein fixed, it is our duty to declare such legislation void. By so doing, the constitution is supported, maintained and preserved as the supreme law of the land.

I think the decree is right. I would affirm.

I am authorized to state that Justices Stiger and Wennerstrum join in this dissent.