Louis H. Cook, Trustee, Appellant, v. B. B. Dewey et al., Appellees.

No. 46291.

June 15, 1943.

Kern & Favillé, of Des Moines, for appellant.

Francis J. Kuble, County Attorney, and James P. Irish, Assistant County Attorney, for appellees.

Smith, J.—The statutory provisions involved in this case are all set out in Cook v. Hannah, 230 Iowa 249, 297 N. W. 262. The factual situation here is also similar to the one in that case. The distinction attempted to be made by appellant between that case and this will be referred to later.

Code section 7164 provides that the county auditor, in computing the tax rate for any taxing district (necessary to

raise the amount required for the certified budget of that district ("and no larger amount") shall take into account, and deduct from the total budget to be raised, the "tax to be derived from the moneys and credits and other moneyed capital taxed at a flat rate as provided in section 6985."

Appellant alleges that the county auditor of Polk county failed in the year 1934 to obey this mandate and that as a consequence a higher rate than necessary was levied, and excessive and illegal taxes were collected for that year from appellant's assignors.

We held in 1937 that such excessive taxes could be recovered (under authority of Code section 7235) and that mandamus was the proper remedy. Hewitt & Sons v. Keller, 223 Iowa 1372, 275 N. W. 94.

Chapter 250 of the Acts of the Forty-eighth General Assembly was thereafter enacted to legalize "all taxes levied, assessed, or collected wherein the county auditor in computing the tax rate" failed to take into account the amount to be derived from the tax on moneys and credits and other moneyed capital and failed to make the required deductions for the years 1934, 1935, 1936, and 1937. We have held this act constitutional. Cook v. Hannah, supra.

In the case just cited, plaintiff urged as one ground of unconstitutionality that the legalizing act was not of uniform operation throughout the state and that it therefore violated section 30, Article III of the State Constitution; also that it denied plaintiff's assignors the equal protection of the laws guaranteed by the Fourteenth Amendment to the Federal Constitution. He based this contention, not upon any language in the act itself, but upon the fact that in some counties the auditors had observed the requirement of section 7164 by deducting the moneys-and-credits tax, and upon the further fact that in some counties, where the auditor did not observe the requirement, refunds to some taxpayers had already been made. And it was argued that, therefore, the legalizing act in question, if upheld, would not and could not have uniform operation but would result in inequalities and discriminations as between the citizens of the various counties.

This contention was rejected by the decision in that case upon the authorities therein cited and upon the considerations therein set forth. These need not be restated here.

Appellant now makes the same argument but attempts to distinguish between the case of Cook v. Hannah and this case. This constitutes the sole question to be determined in this case. His contention may be fairly and concisely stated by quotation from his brief:

"Under the facts presented in that case [referring to Cook v. Hannah], the alleged discrimination was between the taxpayers of the several counties, the taxpayers of some counties in which Section 7164 was strictly complied with, having been taxed under one plan of taxation, while the taxpayers of other counties, including Crawford County, had been taxed under a different plan, and upon a higher tax rate basis. There was no discrimination as between the taxpayers within Crawford County. While in Crawford County the tax rates were excessive, the excessive rates were applied alike, and in the same proportion against all of the taxpayers in Crawford County. It was contended in that case that the legislature cannot prescribe one plan of taxation or one basis for fixing tax rates in one group of counties, and a different plan of taxation or basis for fixing tax rates in another group of counties, and that the legislature, therefore, could not legalize the result existing where two different groups of counties employ two different methods in fixing tax rates, one lawful and the other unlawful."

And again:

"We now have presented the question of whether a county can levy one tax rate against one group of taxpayers within the county, and levy a different and higher rate against other taxpayers within the same county for the same county and municipal purposes."

We do not think the decision in Cook v. Hannah can be distinguished upon any such narrow ground. We are unable to see any difference in principle to justify such attempted distinction. Lack of uniformity between citizens of one county

and citizens of another is not essentially different from lack of uniformity between citizens of one given county or between citizens of different taxing districts within a given county. If there is really lack of uniformity in operation, the fact that the victims are all in the same county can make no difference.

Appellant might with equal logic urge a similar distinction as to cases involving want of uniformity among citizens of different taxing districts in the same county. If the auditor in a given county failed to deduct the tax to be derived from moneys and credits in computing levies for the various taxing districts in his county, it is manifest that all taxpayers in his county would not be alike affected. In no two taxing districts would the amount which he failed to deduct on account of moneys and credits be the same.

By the same token, in no two taxing districts would the legalizing act in question operate to produce the same result. Citizens of one taxing district where the amount of moneys and credits was large would be affected in greater degree than would those in districts where moneys and credits were relatively small. When the argument is thus pressed to its logical extreme it becomes apparent that the attempted distinction is not sound.

The explanation is, that while the law operates uniformly in the constitutional sense, the *results* of its operation are not and cannot possibly be uniform. See the language of Chief Justice Cole in Von Phul v. Hammer, 29 Iowa 222, quoted by the opinion in Cook v. Hannah, 230 Iowa, at top of page 255, 297 N. W. 265. The constitution requires *"uniform operation throughout the State,"* not *uniformity of consequences* resulting from such operation. Such lack of uniformity in result is due to the fact that the law applies to persons differently situated. The constitutionality of a statute cannot be made to depend upon the fact that some taxpayers have received refunds prior to the passage of the act while others have not. Therein lies the vice in appellant's argument. He states his proposition thus:

"When citizens identically situated, have been taxed disproportionately, there is a lack of uniformity in taxation, and a denial of the equal protection of the laws."

The trouble is that the citizens are *not* "identically situated." Some are in districts where there are no moneys and credits or the amount of such property is relatively small or where some may have claimed and received refund of the excess payment before the legalizing act was passed. Others are in districts where the amount of money and credits is relatively great or where some have failed to recover the excess before the right of recovery was taken away. Nevertheless, the *operation* of the law is uniform.

As said in Cook v. Hannah at page 252 of 230 Iowa, page 264 of 297 N. W.:

"If the law operates upon every person within the relation or circumstances provided for in the act, the requirement of uniformity is met."

We have examined the authorities relied on by appellant. They do not apply to the situation here. In Iowa-Des Moines Nat. Bk. v. Bennett, 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265, the plaintiff banks complained that the taxing officers exacted from them taxes on shares of stock at rates higher than were exacted of competing moneyed capital, in contravention of the equal-protection clause of the Fourteenth Amendment.

The opinion in effect held that the Iowa assessment statutes were not applied uniformly to property of the same character held by different owners. As applied to taxpayers identically situated the law was not of uniform operation. In that respect the United States Supreme Court reached the same conclusion as this court had reached in the same case. See Iowa Nat. Bk. v. Stewart, 214 Iowa 1229, 232 N. W. 445. The case is not in point here.

Nor is the case of Pierce v. Green, 229 Iowa 22, 294 N. W. 237, 131 A. L. R. 335, pertinent to our present problem. It was an action to compel members of the State Tax Commission to perform their duties in the assessment of certain property. With the language quoted from that opinion by appellant here we have no quarrel, but it is not in point. It pertains to the matter of uniformity in the application of the law in assessing property.

As we have already pointed· out, the lack of uniformity complained of here is an inequality in *result* due to the fact that at the time the legalizing act took effect the various taxpayers were differently situated. A remedy that had been available was taken away from those who had not availed themselves of it. That was not due to any lack of uniformity in the operation of the law nor did it deny to any the equal protection of the laws. All taxpayers who had not availed themselves of the right of refund were alike thereafter barred from that remedy.

The other cases cited by appellant are, in effect, disposed of by what we said in Cook v. Hannah, supra, supplemented by the views expressed here. The decision of the trial court is right and is hereby affirmed.—Affirmed.

GARFIELD, C. J., and OLIVER,. BLISS, HALE, and MANTZ, JJ., concur.

MULRONEY, J., takes no part.