DAVID B. BREEDON ET UX. *v.* MARYLAND STATE
DEPARTMENT OF EDUCATION ET AL.

[No. 493, September Term, 1979.]

*Decided March 5, 1980.*

The cause was argued before THOMPSON, MOORE and
MELVIN, JJ.

*Ralph J. Moore, Jr.,* and *N. Frank Wiggins,* with whom
were *Cohn & Marks* on the brief, for appellants.

*Ellen M. Heller, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Dennis M. Sweeney, Assistant Attorney General,* on the brief, for appellee Maryland State Department of Education. *Richard C. Daniels,* with whom was *Paul M. Nussbaum* on the brief, for other appellee.

MOORE, J., delivered the opinion of the Court.

William B. Breedon, the subject of this appeal, is a young man with aphasia, a disorder which renders it exceedingly difficult for him to communicate with the world because language is something which he cannot readily comprehend.[1] This dispute began in 1975 when the school officials of Prince George's County decided that William should be placed in a public school facility. William's parents insisted that continued private schooling would better fulfill his educational needs, and they asked the school officials to pay for his tuition.

While at first glance the case appears to center on the procedural and substantive rights of a handicapped child to a publicly-financed, appropriate education, we perceive from the record a procedural error which diverts us from the merits of William's appeal. The issue which we believe is determinative concerns the power of the circuit court, sitting as a reviewing court under the Administrative Procedure Act [2] [hereinafter referred to as the "APA"], to receive, in open court, additional evidence not offered before the administrative agency. The Circuit Court for Prince George's County (Levin, J.) held a hearing and received additional evidence on the parents' appeal from an adverse decision of the Hearing Review Board of the Maryland State Department of Education. For the reasons that follow, we shall vacate the judgment of the circuit court upholding the department's action and remand the case for futher proceedings in accordance with this opinion.

---

1. Aphasia is defined as the: "Partial or total loss of the ability to articulate ideas in any form, resulting from brain damage." The American Heritage Dictionary of the English Language (1973).

2. Md. Ann. Code, art. 41, §§ 244-256A (1979 Cum.Supp.).

## I. The Facts

William, who will be twenty years old this spring, has been the object of attentive parental concern since the discovery of his disorder at age four. Until 1967 the Breedon family resided in the Pittsburgh, Pennsylvania area. Mrs. Breedon diligently sought out an educational program for William but found that aphasic children were in a virtual no man's land, as she explained to the Hearing Review Board:

> "If you want to find the gaps in the educational system have an aphasic child.
> The retarded didn't want him because he wasn't retarded. The deaf didn't want him because he wasn't deaf. He didn't belong with the emotionally disturbed."

After much searching, the Breedons, in 1968, discovered the Children's Hearing and Speech Center at Children's Hospital in the District of Columbia. William was accepted by the center, and the family moved to Maryland. As Mrs. Breedon told the board:

> "It wasn't a hard decision to make at all. We have certainly never regretted it.
> Billy came to Children's really lost. . . . He made steady improvement and he became a person. I have often said that I think Billy joined the world when he came to Children's Hospital. He was not in it before and he now has really become a person."

During the next seven years, until the Spring of 1975, William made steady progress to the point where his linguistic ability ranged between a second grade and a sixth grade level, depending upon the nature of the tests and the particular skill being tested. In April 1975, William turned fifteen; he was then considerably older than the other students at Children's. Mrs. Breedon explained to the board why William's educational program necessitated a change:

> "Last Spring it was decided that he should leave Children's. This was a mutual decision. We all

agreed on it. He was much older than most of their children. We all knew he could still benefit greatly from their language program but he did need to be with older children. He needed to start getting some other things, a more mature program. He needed to mature socially. So we all decided that he should leave and we should try to find another program for him."

Thus began the search for a new school for William.[3] On May 22, 1975, a Pupil Personnel Team for the Prince George's County Schools reported that there was no appropriate public school in the county for a young man with William's needs. Mrs. Breedon immediately filed for tuition funding in order to place William at the Lt. Joseph P. Kennedy Institute in the District of Columbia because "it seemed to me to be the closest thing to what he needed that I could find. It is a fully academic program. . . ."

In July 1975, a reconstituted Pupil Personnel Team reversed the prior team's conclusion and instead proposed that William be placed at the H. Winship Wheatley Center, a facility for multiply-handicapped children operated by the Prince George's County schools. Formal notice of the Wheatley placement was made on August 27, 1975. Not satisfied with the proposed placement, the Breedons requested a local level hearing. In early September 1975, the Breedons received formal notification that their request for tuition funding for the Kennedy Institute had been denied. Feeling very strongly that Wheatley was inappropriate for an aphasic person whose primary need was growth in linguistic ability, the Breedons enrolled him at Kennedy at their own expense.

Again, in February 1976, the Breedons attempted to convince the Prince George's County School officials that the Wheatley school did not meet William's needs. Their effort to have the Wheatley placement reconsidered was denied on March 12, 1976. Shortly thereafter, on March 19, 1976, a

---

3. During this period of time, from 1968 to 1975, William's tuition at Children's was paid by the State, Prince George's County, and the Breedons.

Hearing Panel of the Prince George's County school system (local level hearing) was convened, and it received the testimony of Mrs. Breedon and various experts in the field of special education. Ruling that "William functions as a multiply handicapped youngster," the Hearing Panel stated that the Wheatley "placement was not shown by a preponderance of the evidence to be inappropriate." In addition, the panel concluded that "the Wheatley staff can provide reading, mathematics, and language programs which will reasonably meet William[']s academic needs."

It has been, and continues to be, the Breedons' position that William is chiefly language-impaired. They relegate any motor or behavioral problems to secondary importance and insist that William requires a structural and linguistically-oriented academic program in order to advance his limited capability to comprehend and use the English language. They also contend that William does not function as a multiply-handicapped person, and they allege that the Hearing Panel was wrong in concluding to the contrary.

As provided by the Bylaws of the Maryland State Department of Education, the Breedons appealed to the department's Hearing Review Board (State level hearing).[4] At that *de novo* hearing, Mrs. Breedon and various experts again testified about William, his language impairment, and his educational needs. Two months later, on August 30, 1976, the board affirmed the decision of the local panel, finding that "William functions educationally as a multiply handicapped child with language impairment being the primary area of disability." The board also ruled that "the Prince George's County Public Schools has an appropriate program that can be modified to meet the needs of your son at the Wheatley Special Education Center."

From that adverse ruling, the Breedons again appealed, this time to the Circuit Court for Prince George's County.[5]

---

4. The appeal was authorized by Md. State Dept. of Educ. Bylaw 13.04.01.07.B.1 and Md. Ann. Code, art. 77, § 100A (1975), repealed by 1978 Md. Laws, ch. 22 and re-enacted and recodified in Md. Educ. Code Ann. § 8-415 (b) (1979 Cum.Supp.).

5. The appeal to the circuit court is authorized under the APA, Md. Ann. Code, art. 41, § 255 (a) (1978) and Md. Educ. Code Ann. § 8-415 (f) (1979 Cum.Supp.). It may be noted that a federal statute also affords a right of

They alleged that the board's decision was "against the weight of competent, material, and substantial evidence in view of the entire record as submitted. . . ." *See* Md. Ann. Code, art. 41, § 255 (f) (5) (1979 Cum. Supp.). In addition, the Breedons argued that no public school facilities, appropriate to William's needs, existed in Prince George's County, and they complained about several alleged procedural deficiencies in the administrative process.

Although the order for appeal was filed on September 29, 1976, a hearing on the merits of the Breedons' allegations was not held until September 18, 1978.[6] At that hearing, Judge Levin received further testimony from Mrs. Breedon as well as the testimony of five experts in the field of special education.[7] The Breedons argued that the board had received

---

appeal to aggrieved parties from State level decisions, "which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415 (e) (2) (1976).

The federal statute also provides:

"In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

*Id.* It is axiomatic that the federal statute does not enlarge the Maryland courts' jurisdiction to hear cases nor can it alter the standard of review set out in Md. Ann. Code, art. 41, § 255 (e) (1979 Cum.Supp.). The apparently broader standard of review is available only in the federal district court. The Md. Code provision dealing with the review of an educational placement decision for a handicapped child provides:

"*Except for a review by a circuit court or by the Baltimore City Court,* any review requested by a parent or guardian of a handicapped child shall be conducted in conformity with this section and any applicable federal law."

Md. Educ. Code Ann. § 8-415 (g) (1979 Cum.Supp.). (Emphasis added.) *See also* Moore & Bulman, *Recent Changes in the Law Affecting Educational Hearing Procedures for Handicapped Children,* 7 U. Balt. L. Rev. 41, 60-61 (1977). Section 8-415 (g) read in conjunction with the APA standards of review clearly establishes that APA § 255 is to guide the reviewing court on appeal from a State Hearing Board decision.

6. We glean from the record that the hearing was continued several times. In part, this delay was caused by the State's unsuccessful attempt to quash summonses of State education officials which the Breedons had issued for the hearing.

7. As discussed in part II, *infra,* the court, at the time of the hearing, lacked the authority to receive *de novo* evidence by virtue of an amendment to the APA. 1978 Md. Laws, ch. 884, effective July 1, 1978.

erroneous data regarding the mean I.Q. of the Wheatley class to which William would have been assigned, and that the board had compared the Kennedy and Wheatley schools in reaching its decision without giving the Breedons an opportunity to submit comparative evidence.

In a written opinion, Judge Levin affirmed the decision of the Hearing Review Board and denied the Breedons' motion for further relief.[8] He acknowledged that he "considered the additional evidence adduced before [me] in open court pursuant to § 255 (e) of the Administrative Procedure Act as propounded [sic] prior to the July 1, 1978 amendment to that section which disallowed production of additional evidence before the Court." Although recognizing the disparity in the I.Q. data presented before the board and the court, he did not find it "so significant to warrant the disturbance of the decision of the State Board." [9] He therefore concluded that the board's decision was "clearly supported by competent, material and substantial evidence that William, as a multiply-handicapped child, would get an appropriate education suitable to his needs at Wheatley." The court's opinion was silent on the comparability issue raised by the Breedons.

On this appeal, the Breedons argue that the circuit court applied the wrong standard of review, under either the old or new statutes,[10] and that the Maryland State Department of

_____

**8.** By the date of the hearing, William was no longer attending the Kennedy Institute. Apparently, the Breedons and the Prince George's County school officials negotiated and selected a mutually acceptable private school for William. Thus, in this proceeding, the Breedons' entitlement to a tuition reimbursement for the 1975-76 school year which William spent at Kennedy is alone involved.

**9.** An apparent error was made by the circuit court when it characterized the I.Q. data as relating to "the difference in William's I.Q. as reported at the hearing levels and as presented in open court." In fact, the discrepancy in the I.Q. data related to the mean I.Q. of the class into which it was proposed that William would be placed; the data did not refer to William's own I.Q.

**10.** Under the prior statute, three of the eight possible standards of review applied specifically to the evidentiary basis for the administrative decision. If the court elected to receive additional evidence itself (a procedure no longer permitted under the current APA), then the administrative decision could be upset by the court if it was found to be:

"(6) Against the weight of competent, material and substantial evidence in view of the entire record. as submitted by the agency and including de novo evidence taken in open court; or

Education Bylaw which placed upon them the burden of proof of demonstrating the inappropriateness of the public school's suggested placement at Wheatley is unconstitutional as a deprivation of life, liberty, or property without due process of law.[11]

---

(7) Unsupported by the entire record, as submitted by the agency and including de novo evidence taken in open court. . . ."

1957 Md. Laws, ch. 94 previously codified in Md. Ann. Code, art. 41, § 255 (g) (5) & (6) (1978), repealed by 1978 Md. Laws, ch. 884.

When the court merely reviewed the administrative record without receiving additional evidence, it could overturn the agency decision if it was:

"(5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted. . . ."

Md. Ann. Code, art. 41 § 255 (f) (5) (1979 Cum.Supp.), previously codified in Md. Ann. Code, art. 41, § 255 (g) (5) (1978). Cf. Model State Administrative Procedure Act (1944).

Equating standard number 6 with the "weight of the evidence" test, the Breedons argue that the circuit court improperly used the "substantial evidence" test of standard number 5. They assert that the "substantial evidence" test was incorrectly applied because the circuit court received additional evidence and "attempts to use a 'substantial evidence' test where evidence extraneous to the agency record is involved will always result in decisions based on only part of the record." It is their position that the reviewing court, upon the receipt of new evidence, must weigh all of the evidence in the record, both new and old, in order effectively to evaluate the administrative agency's decision. Any review of lesser scope would not, according to the Breedons, produce the consideration of the totality of the record as envisaged under the standard number 6 "weight of the evidence" review. Of course, this dilemma is removed by the amendments which prohibit the court from receiving de novo evidence; all such evidence must now be taken by the agency during its proceedings or on referral or remand from the court. See Md. Ann. Code, art. 41, § 255 (d) (1979 Cum.Supp.).

11. The Bylaw under which the local level hearing was conducted stated in part that:

"The ultimate burden of proving or disproving appropriateness by a preponderance of the evidence shall be upon the parent(s) or guardian(s). . . ."

Md. State Dept. of Educ. Bylaw 13.04.01.21.B.6 (h). "Appropriateness" is the standard by which a proposed educational placement is to be judged, see Md. Educ. Code Ann. § 8-409 (a) (1978); under the Bylaw then in effect the Breedons were required to disprove the appropriateness of the proposed placement of William at Wheatley.

We are told by the State in its brief that the Bylaw has been amended to read in part:

"The responsibility for explaining the initial placement recommendation shall be upon the local education agency."

Md. State Dept. of Educ. Bylaw 13.04.01.07.A.7 (h). The foregoing provision applies only to the local level hearing.

## II. Authority of Circuit Court to
## Receive Additional Evidence

A significant procedural issue, although discussed by the parties in their briefs, has not been considered by them to be determinative of this appeal; we find it, however, to be dispositive. We advert to the authority of the circuit court, sitting as a reviewing court under the Administrative Procedure Act to receive additional evidence. Under prior law, "the court may order that the additional evidence be taken in open court or before the agency upon such conditions as the court deems proper." [12] 1957 Md. Laws, ch. 94, previously codified as Md. Ann. Code, art. 41, § 255 (e) (1978). In 1978, however, the General Assembly withdrew the authority of the circuit court to receive additional evidence; instead, the law now states that "the court may order that the additional evidence be taken before the agency upon such conditions as the court deems proper." [13] Md. Ann. Code, art. 41, § 255 (d) (1979 Cum.Supp.). *See* 1978 Md. Laws, ch. 884. This latter provision became effective on July 1, 1978.

---

At the state level, no specific regulation provides for a burden of proof on either party. Presently, the Bylaws state that the "decision of the Hearing Review Board shall be based on the information presented on the record at the State hearing." Md. State Dept. of Educ. Bylaw 13.04.01.07.B.7 (b). *See* 5:10 Md. R. 782 (May 19, 1978); 5:5 Md. R. 345 (March 10, 1978); and 4:25 Md. R. 1929 (December 2, 1977).

**12.** It was incumbent upon the party offering the additional evidence, prior to its introduction, to satisfy the court that the evidence was material to the administrative decision and that good reasons existed for the failure to adduce the evidence in the administrative proceedings. *See* section II B&C, *infra.*

**13.** The threshold determination discussed in note 12, *supra,* is still required as a precondition to the receipt of additional evidence under the amended APA. *See* sections II B&C, *infra.*

One exception under which the circuit court may itself receive evidence on the appeal survived the 1978 amendments:

"In cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court."

Md. Ann. Code, art. 41, § 255 (e) (1979 Cum.Supp.). *See also:* Lamar v. Illinois Racing Bd., 55 Ill. App. 3d 640, 370 N.E.2d 1241 (1977); Blesso v. Bd. of Plumbing and Piping Examiners, 30 Conn. Supp. 262, 310 A.2d 136 (1973) [both cases construe similar provisions of the Model State Administrative Procedure Act].

## A. Applicability of the 1978 Amendments

As we previously noted, the order for appeal to the circuit court from the Hearing Review Board was filed on September 29, 1976; this was, of course, prior to the 1978 amendments to the APA. The hearing on the Breedons' appeal did not occur until September 18, 1978 — two and one-half months after the APA had been amended by 1978 Md. Laws, ch. 884. A threshold question thus arises: did the APA amendments revoking the authority of the circuit court to receive additional evidence apply to this proceeding in which the appeal was docketed prior to the amendments but the hearing was held after the amendments became effective? Although the parties never directly raised the issue in the circuit court, the question of the circuit court's authority to receive additional evidence is, in our view, a question of jurisdiction which may be raised at any time, or by this Court *sua sponte. Maryland National Capital Park & Planning Commission v. Washington National Arena,* 37 Md. App. 346, 377 A.2d 545 (1977), *rev'd on other grounds,* 282 Md. 588, 386 A.2d 1216 (1978); *see Mayor of Annapolis v. Hartge,* 38 Md. App. 629, 382 A.2d 345 (1978); *Thompson v. State,* 38 Md. App. 499, 381 A.2d 704 (1978). If the amended APA provisions apply to this action, the circuit court had no authority to receive additional evidence; such evidence could only be received by the agency involved pursuant to the circuit court's order. Md. Ann. Code, art. 41, § 255 (d) (1979 Cum.Supp.).

Under the terms of 1978 Md. Laws, ch. 884, the APA amendments became effective on July 1, 1978. There is no express statutory language that exempts pending actions from the amended provisions, nor is there any language which specifically denies an exemption. The general rule guiding the applicability of statutes to pending actions is that:

> "Absent a contrary intent made manifest by the enacting authority, any change made by statute or court rule affecting a remedy only (and consequently not impinging upon substantive rights) controls all court actions whether accrued, pending, or future."

*Aviles v. Eshelman Electric Corp.,* 281 Md. 529, 533, 379 A.2d 1227, 1229 (1977). *See Janda v. General Motors Corp.,* 237 Md. 161, 168-69, 205 A.2d 228, 232-34 (1964). *See also Luxmanor Citizens Association v. Burkhard,* 266 Md. 631, 296 A.2d 403 (1972) (statutory change in regard to procedure applies to all actions then pending at effective date of change); *Kelch v. Keehn,* 183 Md. 140, 36 A.2d 544 (1944); *Ireland v. Shipley,* 165 Md. 90, 166 A. 593 (1933).

We have little difficulty in holding that the revocation of the authority of the circuit courts to receive additional evidence in administrative review proceedings applied at least to those actions pending on July 1, 1978 in which evidence had not been taken under the prior law. In the instant case, therefore, the circuit court improperly received additional evidence in open court after that date. As heretofore stated, under both the old and new APA provisions relating to the taking of additional evidence, it was incumbent upon the party seeking to introduce the additional evidence to establish to "the satisfaction of the court that the additional evidence is *material* and that there were *good reasons* for failure to present it in the proceeding before the agency." Md. Ann. Code, art. 41, § 255 (d) (1979 Cum.Supp.) (emphasis added). The State argues that neither condition has been established by the Breedons. It follows, then, according to the State, that no referral to the agency for the taking of additional evidence is necessitated. We are asked to affirm the circuit court's judgment because even with the additional evidence, the court was unable to overturn the board's decision. In essence, the State contends that the circuit court's receipt of additional evidence, while erroneous, was harmless. We do not agree.

## B. Materiality

The State points out that Judge Levin ruled that the disparity in the I.Q. data was not "so significant to warrant the disturbance of the decision of the State Board," and therefore, the evidence was not material. As to this point, we believe that the State is confusing significance with materiality. The court's determination that the evidence was

not sufficiently significant to compel a change in the State Hearing Board's decision does not constitute a finding that the evidence was not material.[14] Materiality, as referred to in the APA provision, is a broad concept that is generally understood to include any evidence which is reasonably capable of influencing a tribunal's decision, but it does not require that the evidence will *necessarily* do so. Numerous court decisions have discussed the concept of materiality:

"A fact is material if it tends to facilitate resolution of any of the issues either for or against the party having the burden of persuasion on that issue."

*Brandon v. State,* 264 Ind. 177, 180, 340 N.E.2d 756, 758 (1976). *See Parklawn, Inc. v. Nee,* 243 Md. 249, 254, 220 A.2d 563, 566 (1966); *Dietrick v. District of Columbia Board of Zoning Adjustment,* 293 A.2d 470, 473 (D.C. 1972) (issue was material where it was within conditions to be considered by the agency).[15] In sum, material evidence need not be determinative of the outcome of a given issue, but rather, it must be of such a nature as would tend to influence the making of the decision.

---

**14.** Under the amended APA provisions, the weighing of the additional evidence is no longer a function performed by the court, but rather by the agency in the first instance on referral from the court. Md. Ann. Code, art. 41, § 255 (d) (1979 Cum.Supp.). We deem this procedure wholly salutary because it properly requires that the administrative agency assess the significance of the additional evidence and possibly adjust its decision based on that evidence, prior to a full and complete review by the court of the administrative record. In the field of public education, where administrative expertise is afforded the widest latitude, *see* Resetar v. State Bd. of Educ., 284 Md. 537, 554, 399 A.2d 225, 234, *cert. denied,* 444 U.S. 838, 48 U.S.L.W. 3219 (1979), this procedure maintains the requisite administrative independence and flexibility while preserving ultimate judicial oversight as a bulwark against arbitrary and capricious action.

**15.** Black defines material evidence as:

"That quality of evidence which tends to influence the trier of fact because of its logical connection with the issue. Evidence which has an effective influence or bearing on [the] question in issue is 'material'. . . . 'Materiality' of evidence refers to pertinency of the offered evidence to the issue in dispute."

Black's Law Dictionary (5th ed. 1979). For other cases which discuss and define the concept of materiality, *see* Migliore v. County of Winnebago, 24 Ill. App. 3d 799, 321 N.E.2d 476 (1974); United States v. Makris, 483 F.2d 1082 (1973), *appeal after remand,* 535 F.2d 899 (5th Cir. 1976), *cert. denied,* 430 U.S. 954 (1977); and Weinstock v. United States, 231 F.2d 699 (D.C. Cir. 1956).

The additional evidence in this case related to the error in I.Q. data presented to the State Hearing Board and the comparability of the programs at the Wheatley and Kennedy schools. Since the erroneous I.Q. data was indicative of the academic environment proposed for William at Wheatley, the evidence was clearly material in light of the extensive expert testimony that William required a challenging and structured academic program. As to the additional evidence comparing the programs at Wheatley and Kennedy, it must be remembered that the board had made an express finding that there was "no significant difference" in the two programs.[16] Clearly, the comparability evidence was material to the decision made by the board.

## C. "Good Reasons" For Non-presentation to Agency

The erroneous I.Q. data was supplied by the county, and the error was not discovered until after the board had rendered its decision. Obviously, this subsequent discovery more than satisfies the good reason requirement of the APA. During the course of the hearing before the board, the propriety of comparing Wheatley to Kennedy was discussed. The board determined that it did not require the comparability evidence *at that time,* but the Breedons did offer to produce it:

> [BREEDONS' COUNSEL]: "If the Hearing Panel does feel they get to a certain point where they do need this extra testimony we will be glad to furnish it."
>
> [THE CHAIRMAN]: "And we will be glad to notify you of the same but we want you to be cautioned that it has manifested itself and due note has been taken to it."

---

16. Normally, the sole issue before the board is the "appropriateness" of the placement proposed by the local school officials and approved at the local level hearing. *See* note 11, *supra.* In the instant case, the board chose to evaluate the propriety of the proposed Wheatley placement in light of other programs such as that at Kennedy. As a reviewing court, we cannot gainsay the board's decision to use such comparability data in deciding the propriety of the Wheatley placement. Those matters of internal operation, procedure, and evidence are typically consigned to the expertise of the administrative agency.

It is uncontroverted that no request for supplemental testimony was ever forthcoming from the board; nonetheless the board did make comparative findings with respect to the two schools. The Breedons' proffer coupled with the board's assurance that a request would be made should the issue prove relevant, is sufficient to constitute good reason for failure to present that evidence before the board.

### III. The Procedure for the Taking of Additional Evidence

It is our conclusion, therefore, that the circuit court properly decided that additional evidence should be received in the case, but improperly received that evidence itself. Instead, the case should have been referred to the administrative agency for the taking of additional evidence. Once the agency receives such evidence:

> "[I]t may modify its findings and decision by reason of the additional evidence and shall file with the reviewing court, to become a part of the record, the additional evidence, together with any modifications or new findings or decision."

Md. Ann. Code, art. 41, § 255 (d) (1979 Cum. Supp.). This section does not require a complete remand of the case to the administrative agency, but rather it anticipates a referral for the receipt of additional evidence with an opportunity for the agency to modify its findings or decision.[17] The circuit court remains a "reviewing court," and the section clearly requires the agency to submit the additional evidence to the court along with its modifications, if any.[18] The APA contemplates

---

**17.** Other circumstances, such as an alleged defect in the administrative proceeding exceeding the mere failure to receive certain additional evidence, may mandate a complete remand of the case under § 255 (f) rather than a referral for the taking of additional evidence under § 255 (d). Md. Ann. Code, art. 41, § 255 (1979 Cum. Supp.). Since, in the instant case, the defect in the board's hearings relates only to a failure to receive additional evidence, a full remand to the board from the circuit court is not necessitated. *See also* Toland v. State Board of Education, 35 Md. App. 389, 398, 371 A.2d 161, 166 (1977).

**18.** Nothing in the APA prevents the parties, of course, from stipulating that the additional evidence received by Judge Levin be submitted to the board on referral from the circuit court.

that the circuit court, while ordering additional evidence to be received by the agency, retains continuing jurisdiction over the appeal. After the agency has completed its action, the circuit court may then proceed with its consideration of the appeal on the merits. Naturally, it is possible that the additional evidence and any modification of the agency decision premised thereon may render the appeal moot or at least alter its focus.

The error in the proceedings at the circuit court level requires that we vacate the judgment of the circuit court and remand the case for further proceedings in accordance with this opinion.[19]

> *Judgment vacated; case remanded to the Circuit Court for Prince George's County for further proceedings consistent with this opinion; costs to be paid by the appellees.*

---

**19.** Because the Bylaw challenged by the Breedons on due process grounds has been amended and presumably as amended will guide any further proceedings in this case at the administrative level, we do not decide the merits of the Breedons' due process claims. *See* n. 11, *supra. But see* Stemple v. Bd. of Educ. of Prince George's County, 464 F. Supp. 258 (D. Md. 1979), *appeal docketed,* (No. 79-1208, 4th Cir., March 30, 1979) (upholding constitutionality of the prior Bylaw against due process challenge).