INTERSTATE POWER
COMPANY, Appellee,

v.

IOWA STATE COMMERCE
COMMISSION, Appellant,

and

Office of Consumer Advocate,
Intervenor–Appellant.

No. 89–750.

Supreme Court of Iowa.

Nov. 21, 1990.

As Corrected Nov. 28, 1990.

Susan Allender, Gen. Counsel, and Diane Munns, Deputy Gen. Counsel, for appellant Iowa State Commerce Comm'n, now the Iowa Utilities Bd.

James R. Maret, Consumer Advocate, Ronald C. Polle, and Alexis K. Wodtke, for intervenor-appellant Office of Consumer Advocate.

Clement F. Springer, Jr., and William D. Carstedt, Defrees & Fiske, Chicago, Ill., for appellee Interstate.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

In this rate-making proceeding we must decide whether the district court abused its discretion when it remanded for additional evidence pursuant to Iowa Code section 17A.19(7) (1985). Because we think it did not abuse its discretion, we affirm.

I. *Background Facts and Proceedings.*

On June 30, 1983, Interstate Power Company filed a request with the Iowa state commerce commission (now the Iowa utilities board) to increase its electric rates. Interstate is a public utility. It provides electric services at retail and wholesale in northeast and north-central Iowa, southern Minnesota, and northwestern Illinois.

Interstate raised and litigated several issues before the board. One issue Interstate did not specifically litigate concerned the proper method for calculating deferred federal income taxes which result from Interstate's use of the accelerated depreciation method.

To understand why Interstate did not litigate this issue, we need to delve into some additional history. Interstate began using the accelerated depreciation method for property placed in service in 1978 and thereafter. See I.R.C. § 168. Because Interstate used the accelerated depreciation method, it had a deferral of both federal and state income tax liability.

After Interstate began using this method, the board ordered Interstate to comply with two conditions. Interstate had to flow through to ratepayers the current benefits of reduced Iowa state income tax due to accelerated depreciation. In other words, only federal deferred income taxes could be recovered in the rate base. Interstate also had to amortize over five years accumulated deferred state tax liability existing on December 31, 1979.

Interstate began complying with these two conditions. During this time there was no internal revenue service (IRS) interpretation whether the board's conditions met IRS' normalization requirements. See I.R.C. § 167(l).

The board required all utilities in Iowa to comply with these same two conditions. The board determined that utilities had to use a 41.63% rate for deferral of federal income tax liability.

When Interstate filed its present application for rate increase, Interstate used the 41.63% deferral rate in the application. Using that rate, Interstate charged $1,825,389 of deferred income tax expense to cost of services during the test year. The board determined that $5,505,000 of accumulated deferred income taxes should be deducted from the rate base.

After the board issued its final decision on June 25, 1984, Interstate filed a petition for judicial review in the Dubuque County District Court. See Iowa Code § 17A.19. In its petition, Interstate challenged the board's decision on six grounds. None of these grounds included a challenge to the undisputed tax calculation.

The Office of Consumer Advocate (OCA), a party to the rate-making proceeding before the board, also filed a petition for judicial review. See Iowa Code § 475A.2(3). But the OCA's petition was filed in Polk County District Court on July 23, 1984. Interstate's petition was transferred to the Polk County District Court. See Iowa Code § 17A.19(2).

While these petitions were pending, the IRS issued revenue rulings to two other utilities. These rulings mandated the use of a 46% deferral rate rather than the 41.63% rate the board required. Shortly thereafter the board acquiesced in the rulings.

Interstate then filed, in May 1985, an application for leave to present additional evidence to the board. See Iowa Code § 17A.19(7). In its application, Interstate detailed the history regarding the board's insistence on the use of a 41.63% deferral rate. It also alleged the facts surrounding the two revenue rulings and the board's acquiescence to them. Interstate pointed out that, absent a remand and modification of the board's decision, Interstate might lose—at a great cost to ratepayers—its right to use the accelerated depreciation method.

The board moved to defer consideration of the application because of an application for interlocutory appeal filed by Interstate. See Iowa R.App.P. 2. The application challenged the Polk County District Court's jurisdiction over the OCA's petition for judicial review.

On June 15, 1985, the Polk County District Court granted the board's motion to defer. In November 1985 we decided the interlocutory appeal. We held that both judicial review proceedings were properly under the Polk County District Court's jurisdiction. See Office of Consumer Advocate v. Iowa State Commerce Comm'n, 376 N.W.2d 878, 882 (Iowa 1985).

On September 12, 1986, the Polk County District Court, the Honorable Anthony Cri-

telli presiding, consolidated the two judicial review proceedings. Judge Critelli also granted Interstate's renewed application for leave to present additional evidence before the board. Judge Critelli specifically found that the new IRS rulings were material. He also found that Interstate had shown good reasons for its failure to present this evidence in the original rate-making proceeding.

The board then filed an application for interlocutory appeal, challenging Judge Critelli's ruling. This application was denied in November of 1986 by an order of a single justice of this court. *See* Iowa R.App.P. 2.

On remand the board received evidence about the new IRS rulings. It then permitted Interstate to use the higher rate to calculate its deferred federal income tax expense. The district court, the Honorable Arthur E. Gamble presiding, ultimately ruled on the merits of the petitions for judicial review. The OCA and the board appealed. Both challenge Judge Critelli's ruling on Interstate's renewed motion for leave to present additional evidence.

## II. *Other Issues.*

Interstate urges a number of reasons why we should not reach the remand issue. We find no merit in any of these reasons.

## III. *The Remand Issue.*

In a contested case proceeding—such as this one—the district court may order that additional evidence be taken before the agency. *See* Iowa Code § 17A.19(7); *Cedar Valley Leasing, Inc. v. Iowa Dep't of Revenue,* 274 N.W.2d 357, 361–62 (Iowa 1979). The parties seeking such relief must show the district court that the "additional evidence is material and that there were good reasons for failure to present it" to the agency. Iowa Code § 17A.19(7). If the district court finds that these two conditions are met and orders a remand,

> [t]he agency may modify its findings and decision in the case by reason of the additional evidence and shall file that evidence and any modifications, new find-

ings, or decisions with the reviewing court. . . .

*Id.*

The OCA and the board contend the additional evidence must relate to issues raised in the contested case proceeding. They argue that Interstate never challenged the 41.63% deferral rate. So, the argument continues, Interstate should not be permitted to raise a new issue via section 17A.19(7).

The OCA and the board also contend that such use of the remand procedure would undercut finality, an important consideration in administrative agency proceedings. If we affirm, they think the floodgates would open to limited remand requests whenever an agency changes precedent after a contested case proceeding.

In contrast, Interstate contends that section 17A.19(7) represents a legislative policy. This policy, Interstate argues, permits an agency to hear new facts that might require a modification of agency action. For reasons that follow we agree with Interstate's position.

A. *Error preservation.* It is true that we have consistently held that a party is precluded from raising issues in the district court that were not raised and litigated before the agency. *See, e.g., Chauffeurs, Local Union 238 v. Civil Rights Comm'n,* 394 N.W.2d 375, 384 (Iowa 1986); *Richards v. Iowa Dep't of Revenue,* 360 N.W.2d 830, 833 (Iowa 1985); *Easter Lake Estates, Inc. v. Iowa Natural Resources Council,* 328 N.W.2d 906, 910 (Iowa 1982). The rule stems from the doctrine of error preservation. To preserve error for appeal, a party must raise the issue before the agency. *Chauffeurs,* 394 N.W.2d at 384. The OCA and the board argue that permitting remands for additional evidence on new issues flies in the face of this doctrine.

Interstate filed a request with the board to increase its electric rates. The overriding issue in a rate-making proceeding is the propriety of the rate fixed. *See Iowa–Illinois Gas & Elec. Co. v. Iowa State Commerce Comm'n,* 412 N.W.2d 600, 605 (Iowa 1987). True, the specific deferral

rate was not a contested issue before the board. But the rate still figured prominently in the determination whether an electric rate increase was warranted. In these circumstances we are hard pressed to say that the deferral rate was not an issue before the board. So the IRS interpretive rulings were clearly material to the ultimate rate-making issue which was before the board at all times.

More important the board insisted in the past on an incorrect deferral rate. So the OCA and the board should not now be in a position to take advantage of Interstate's failure to challenge the rate.

Moreover section 17A.19(7) does not expressly require "additional evidence" to pertain solely to issues raised and litigated before the agency. Indeed, section 17A.19(7) expressly authorizes a remand when the court believes there is additional material evidence and good reasons why it was not presented to the agency. Our review is limited to determining whether the district court abused its discretion in ordering such a remand. *See Frank v. Iowa Dep't of Transp.*, 386 N.W.2d 86, 87–88 (Iowa 1986). And that question turns on whether a showing was made as to these two conditions.

We think both conditions were clearly met. The revenue rulings and the board's acquiescence were not available to the board in the original contested case proceeding. *Cf. Breedon v. Maryland State Dep't of Educ.*, 45 Md.App. 73, 84–86, 411 A.2d 1073, 1080 (1980) (discovery of erroneous data subsequent to its presentation to agency satisfied "good reasons" requirement). That was self evident. And this evidence was clearly material because it was "reasonably capable of influenc[ing an agency's] decision." *Id.* at 84, 411 A.2d at 1080. This, of course, is born out by the board's modification order on remand.

■ B. *Finality.* It is also true that we have stressed finality as an important consideration in administrative agency proceedings. In *Davenport Water Company v. Iowa State Commerce Commission*—a case the OCA and the board rely heavily

on—we had this to say about finality in rate-making proceedings:

> With regard to utilities' invocation of the Federal Tax Reform Act of 1969, we accord it no consideration because commission's order is to be tested on the basis of the record made, including such federal tax legislation as may have then been in effect. If rate orders were to be tested on the basis of events which may have occurred subsequent to the test year, or since the rate order was issued, there would never be any finality to any such hearing or attendant decision.

*Davenport Water Co. v. Iowa State Commerce Comm'n,* 190 N.W.2d 583, 611 (Iowa 1971) (citations omitted).

*Davenport Water Company* was decided in 1971. Section 17A.19(7) became law in 1975. This section, we think, supersedes any notion in *Davenport Water Company* that the district court lacks authority to remand. As we said, the overriding issue in a rate-making case is the propriety of the rate fixed. We think section 17A.19(7) gives the district court discretion to allow the board to hear all material evidence, including later evidence, bearing on the proper rate.

Rather than focusing in on this overriding issue, the OCA and the board have focused on a side issue: whether the deferral rate had been specifically litigated before the board. That issue is subsidiary to the always-present primary issue concerning the propriety of the utility rate. Apparently the board, like the district court, thought the IRS interpretation rulings were important because the board changed its position on remand.

Early finality of rate-making proceedings is desirable. Fixing the proper utility rate based on material evidence, however, is even more important.

We do not share the OCA's and the board's fear that our decision will open the floodgates to section 17A.19(7) remand requests. We think our utility rate judges will apply the two stringent requirements of that section and allow only meritorious requests.

Iowa Code section 602.1212 provides for appointment of utility rate judges to preside over utility rate-making cases. The statute requires their appointment on the basis of qualifications and experience. The statute contemplates developing a pool of district judges who will have the knowledge and experience needed to expedite judicial review of rate-making proceedings. We think these judges can expedite utility cases even though section 17A.19(7) remands are granted. They can accomplish this by simply requiring the board to hear the remands and decide the issues within a short designated time frame.

IV. *Disposition.*

For all of these reasons, we think the district court properly exercised its discretion in remanding for additional evidence.

Finding no abuse of discretion, we affirm.

AFFIRMED.