# IN THE SUPREME COURT OF IOWA

No. 17 / 07–0558

Filed May 30, 2008

**CITY OF CORALVILLE, IOWA,**

Appellant,

vs.

**IOWA UTILITIES BOARD
(DEPARTMENT OF COMMERCE),**

Appellee,

**MIDAMERICAN ENERGY COMPANY,** and
**CONSUMER ADVOCATE DIVISION OF
THE DEPARTMENT OF JUSTICE,**

Appellees.

---

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

A city challenges an Iowa Utilities Board ruling affirming a public utility's right under a tariff to include the costs of relocating power lines in the price charged to its customers for electricity. **AFFIRMED.**

Ivan T. Webber, Ahlers & Cooney, P.C., Des Moines, for appellant.

David J. Lynch, General Counsel, and Gary Stump, Assistant General Counsel, for appellee Iowa Utilities Board.

Sheila K. Tipton of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for interested party-appellee MidAmerican Energy Company.

John R. Perkins and Ben A. Stead, Office of Consumer Advocate, for interested party-appellee Office of Consumer Advocate.

**HECHT, Justice**.

In this case we examine the limits of a municipality's home rule authority to control its right-of-way. On review of a decision of the Iowa Utilities Board, we conclude a tariff filed by a public utility does not conflict with an ordinance adopted by the City of Coralville so as to constitute a violation of the City's home rule authority. We affirm.

## I. Factual and Procedural Background.

A controversy between MidAmerican Energy Company and the City of Coralville arose in January 2000, when the City notified MidAmerican of a plan to widen 1st Avenue in Coralville. The plan necessitated the relocation of MidAmerican's overhead power lines. MidAmerican determined the lines should be placed underground, and claimed a tariff it had filed with the Iowa Utilities Board (IUB) permitted the company to charge the costs of "undergrounding" to the City. In *City of Coralville v. MidAmerican Energy Co.*, Johnson Co. No. LACV61728 (*Coralville I*), the district court determined that although the tariff addressed the imposition of the costs of "undergrounding" on customers requesting a change of service, the City was not acting as a customer when it passed its undergrounding ordinance and undertook the road-widening project. The court concluded the City acted instead in its role as the owner of the right-of-way, and had authority, incident to its police power, to order the utility to move wires underground "at the utility's expense." MidAmerican did not appeal the judgment in *Coralville I*.

In 2005, the City of Coralville determined the overhead power lines in a different location along Quarry Road and 7th Street should be placed underground to facilitate another public project. The City, relying on its ordinance requiring utilities to relocate at their expense equipment located in the City's right-of-way, directed MidAmerican to place its

power lines at that location underground and refused MidAmerican's request for reimbursement of the cost. MidAmerican acquiesced to the City's undergrounding directive, but informed the City it reserved the right to recover from its customers in the City of Coralville the costs of relocating the wires in accordance with a tariff on file with the IUB.

The relevant tariff became effective in 2003. It provides, in relevant part:

> Conversion of existing overhead facilities to underground or relocation of facilities will be allowed unless an engineering, operating, construction, safety or legal reason would make such installation inadvisable.
>
> The customer(s) requesting the conversion or relocation must pay a contribution. . . .
>
> If conversion is required by a governmental unit, the conversion cost will be charged to the governmental unit or to the Company's customers in the governmental unit.[1]

The City filed a petition in the district court seeking a declaration that the tariff was inapplicable and enjoining MidAmerican from assessing the tariff against Coralville residents.[2] While that action was pending in the district court, MidAmerican filed a petition before the IUB seeking a declaration that the IUB had exclusive jurisdiction over the rates and tariffs charged by public utility companies, and requesting a determination that the City could not, through its ordinance, prevent the company from charging its customers for the costs of relocating its equipment. The City intervened in the proceeding before the IUB, contending (1) the preclusive effect of the district court's decision in

---

[1]The tariff relied upon by MidAmerican in *Coralville I* included identical language permitting the conversion costs to be "charged to the governmental unit or to the Company's customers in the governmental unit."

[2]The district court's decision addressing the declaratory judgment action is the subject of our opinion filed today in *City of Coralville v. MidAmerican Energy*, No. 06–1420, 2008 WL 2222234.

*Coralville I* barred MidAmerican's plan to pass through the costs of undergrounding to its Coralville customers, (2) the IUB lacked jurisdiction "over a dispute that is not about rates and services but about use of [the City's] right of way," (3) the tariff violated the City's home rule authority to control its right-of-way, and (4) the tariff violated provisions of the Iowa Constitution requiring uniform application of the state's laws.

The IUB issued a declaratory order rejecting the City's preclusion argument on the ground the issue before the agency was different than the one addressed by the court in *Coralville I.* The board's order also rejected the City's claim that the utility's plan to charge the costs of the undergrounding to the City's residents would violate the City's home rule authority to control the right-of-way. The board further concluded the interpretation of the ordinance advanced by the City would infringe on the board's "jurisdiction related to utility tariffs, cost recovery, and cost allocation," reasoning if the City's position were to prevail, "[c]ities across Iowa could impose all manner and types of costs on utilities, regardless of reason, and force ratepayers in other areas to pay the bill."

The City sought judicial review of the IUB's declaratory order, contesting the IUB's jurisdiction to limit a municipality's control of its right-of-way and challenging the validity and constitutionality of the tariff. The district court affirmed the board's exercise of jurisdiction and the validity of the tariff. The court also rejected the City's issue preclusion claim, and denied the City's constitutional challenge.

## II.    Scope of Review.

On appeal from judgment entered on judicial review of agency action, we review for errors at law. *Gaffney v. Dep't of Employment Servs.*, 540 N.W.2d 430, 433 (Iowa 1995). Where interpretation of a statute has clearly been vested in the agency's discretion, we generally

defer to the agency's interpretation, and may grant relief only if the agency's interpretation is "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(*l*) (2005). If interpretation of the statute has not clearly been vested in the agency's discretion, we afford no deference to the agency's interpretation, and may substitute our own judgment for that of the agency. *Id.* § 17A.19(10)(*c*), (11)(*b*); *Auen v. Alcoholic Beverages Div. of the Iowa Dep't of Commerce,* 679 N.W.2d 586, 589–90 (Iowa 2004). Interpretation of a statute has been clearly vested in the agency's discretion where

> the precise language of the statute, its context, the purpose of the statute, and the practical considerations involved [indicate] that the legislature intended (or would have intended had it thought about the question) to delegate to the agency interpretive power with the binding force of law over the elaboration of the provision in question.

Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 68 (1998).

The issue before the IUB involved the intersection between Iowa Code section 476.1, which grants to the IUB authority to regulate public utility rates and services, and section 364.2(4)(*e*), which grants to cities the power to regulate the use of their streets and public grounds. Consequently, the agency's resolution of this matter necessitated an interpretation of the intended scope of these provisions. The IUB has been granted "broad general powers to effect the purposes" of chapter 476, which includes the authority to regulate public utility rates. *Id.* § 476.2(1). The agency has clearly been vested with authority to interpret the "rates and services" provision of section 476.1, and we may therefore overturn its interpretation only if it is "irrational, illogical, or wholly unjustifiable." *Id.* § 17A.19(10)(*l*). The agency has not, however,

been vested with authority to interpret chapter 364, and we therefore review its interpretation of section 364.2(4)(*e*) de novo. *Id.* § 17A.19(10)(*c*); *Birchansky Real Estate, L.C. v. Iowa Dep't of Pub. Health, State Health Facilities Council*, 737 N.W.2d 134, 138 (Iowa 2007).

We review de novo constitutional challenges to a statute. *Wright v. Iowa Dep't of Corr.*, 747 N.W.2d 213, 216 (Iowa 2008).

**III.    Discussion.**

**A.    Issue Preclusion.**  The City contends the district court erred in concluding the holding in *Coralville I* did not preclude a finding in this case that MidAmerican could charge the cost of undergrounding to its Coralville customers.   We identified the four elements of an issue preclusion claim in *Hunter v. City of Des Moines*, 300 N.W.2d 121 (Iowa 1981):

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

300 N.W.2d at 123 (citation omitted).  The City's issue preclusion claim fails to satisfy these elements.

The City claims the issue of who must pay for the undergrounding was raised and decided in *Coralville I,* and that the issue raised in this case is identical.   This claim relies primarily on the district court's statement in *Coralville I* that "[t]he central question in the case is whether the City of Coralville has authority to order a utility to move overhead utility service and place it underground *at the utility's expense.*" (Emphasis added.)  A careful reading of the court's decision in *Coralville I,* however, discloses the court was not asked to decide, and did not decide, whether MidAmerican could pass the costs of undergrounding

through to its Coralville customers. In fact, MidAmerican's effort to recover the costs of undergrounding from its Coralville customers was not undertaken until after the district court determined in *Coralville I* that the City, as a governmental unit, should not bear the costs of the undergrounding. We conclude the district court's determination in *Coralville I* that undergrounding be undertaken "at the utility's expense" must be read in its proper context: *viz.*, as between the City and the utility, which party should bear the cost of the relocation of the utility's wires. The court was not called upon to decide whether, should MidAmerican rather than the City be required to bear the cost, the utility could pass that cost through to its Coralville customers under the prevailing tariff. Thus, the issue in *Coralville I* was clearly not identical to the issue decided in this case by the IUB. We therefore agree with the district court on this issue.

**B.     Authority of the IUB to Issue a Tariff Permitting a Utility to Recover Costs Incurred for the Relocation of Equipment.** The City contends the tariff exceeded the IUB's authority. In particular, the City asserts the tariff regulates and infringes illegally upon the City's right to control its right-of-way. *See* Iowa Code § 364.2(4)(*e*) (granting municipalities the right to "regulate the conditions required and the manner of use of the streets and public grounds of the city"). The tariff regulation goes far afield, the City contends, from the IUB's legitimate authority to regulate the "rates and charges for public utility service." *Id.* § 476.1. We disagree. Coralville's argument is precariously based on a perceived conflict between the City's and the IUB's authority to control the City's right-of-way. We now address the question whether the conflict perceived by the City is real or imagined.

The City has exercised its right to regulate the "conditions required" of its streets by enacting an ordinance, section 141.28, which provides:

> Upon written notification by the City, the registrant shall promptly and *at its own expense* remove and replace, relocate or otherwise adjust its equipment located in the right-of-way and restore the right-of-way to the same condition it was in prior to said removal or relocation.

(Emphasis added.)  The requirement that public utilities relocate at the City's request equipment situated in the right-of-way can be reasonably understood as a regulation of the "conditions required" of the right-of-way.  The types of equipment permitted and their location in the right-of-way are essential features of the City's statutory authority to control the condition of the right-of-way.  In contrast, the italicized phrase "at its own expense" within the ordinance relates only to the means by which a utility elects to generate the funds required to pay for a relocation of its equipment.  The manner in which a public utility chooses to allocate or recover such costs bears no factual or legal relationship to the City's exercise of control over its right-of-way.  We therefore conclude the conflict perceived by the City between its ordinance and the tariff is nonexistent.  The absence of an actual conflict between the tariff and the City's authority to control its right-of-way dooms the claim that the IUB's decision contravenes the City's home rule authority.

An ordinance is within a municipality's home rule authority only if it is not inconsistent with a state statute.  Iowa Const. art. III, § 38A (stating a city may exercise its home rule authority only to the extent that its actions are "not inconsistent with the laws of the general assembly"); Iowa Code § 364.1 (same).  "A municipal ordinance is 'inconsistent' with a law of the General Assembly and, therefore,

preempted by it, when the ordinance prohibits an act permitted by a statute, or permits an act prohibited by a statute." *Sioux City Police Officers' Ass'n v. City of Sioux City*, 495 N.W.2d 687, 694 (Iowa 1993) (citations omitted). Prior to 1963, the Iowa Code authorized cities to regulate utility rates. *Davenport Water Co. v. Iowa State Commerce Comm'n*, 190 N.W.2d 583, 590 (Iowa 1971) (*superseded on other grounds by statute as stated in Interstate Power Co. v. Iowa State Commerce Comm'n*, 463 N.W.2d 699, 702 (Iowa 1990)). That power is now vested exclusively in the IUB under chapter 476. *Id.* Iowa Code section 476.1 provides the IUB "shall regulate the rates and services of public utilities." With the creation of the IUB, and the vesting of authority in that agency to regulate public utility rates, municipalities lost their authority to regulate such rates. *Davenport Water Co.*, 190 N.W.2d at 590; *see Sioux City Police Officers' Ass'n*, 495 N.W.2d at 694 (noting the legislature may impose limitations on municipalities' power over local affairs). The City's interpretation of the cost-allocation provision in section 141.28, if accepted, would have the effect of prohibiting MidAmerican from reflecting its costs of doing business through the appropriate adjustment of rates charged to its customers under a valid tariff. That interpretation of the ordinance cannot be reconciled with the legislature's abrogation of municipal authority over public utility rates and the statutory grant of broad authority to the IUB to "regulate the rates and services of public utilities." *Sioux City Police Officers' Ass'n*, 495 N.W.2d at 694 (stating that "[i]f a statute and ordinance cannot be reconciled, the statute prevails"). We find no error in the board's rejection of the City's home rule argument.

The City also challenges the IUB's affirmation of the validity of the tariff, contending no rule or contested case specifically authorizes

utilities to recover from their customers costs incurred in equipment relocation. Iowa Code section 476.4 requires a public utility to file tariffs with the IUB "showing the rates and charges for its public utility services," and requires the IUB to promulgate rules for the filing of tariffs. Based on this rulemaking authority, the IUB requires that "rates charged by an electric utility for providing electric service to each class of electric consumers shall be designed, to the maximum extent practicable, to reasonably reflect the costs of providing electric service to the class." Iowa Admin. Code r. 199—20.10(2). These authorities amply support the board's issuance of the subject tariff. The cost of municipally mandated undergrounding is clearly a cost of providing service to MidAmerican's customers, and may be reflected in the rates charged by MidAmerican. The tariff constituted a valid exercise of the broad authority vested in the IUB.

**C.    Constitutional Claims.**  Finally, the City contends the tariff regime under chapter 476 violates the uniformity requirements of article I, section 6 and article III, section 30 of the Iowa Constitution. Article I, section 6 provides:

> All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.

Article III, section 30 contains a similar requirement that all laws be general and operate uniformly throughout the state. Iowa Const. art. III, § 30 (requiring that "where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state"). We have generally viewed these provisions of the Iowa Constitution as being similar in scope, import, and purpose to the equal protection provision of the Fourteenth Amendment to the federal Constitution. *See Dickinson v.*

*Porter*, 240 Iowa 393, 400, 35 N.W.2d 66, 71–72 (1949). *But see Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 4–5 (Iowa 2004) (noting that we may, in an appropriate case, adopt a different analytical framework under the state constitution). While we maintain our authority to adopt our own equal protection analysis under the Iowa Constitution, we see no basis for doing so in this case.[3]

We review the City's constitutional challenge to this economic legislation under the rational basis standard. *State v. Simmons*, 714 N.W.2d 264, 277 (Iowa 2006). Under this standard we will sustain a legislative classification if it is rationally related to a legitimate state interest. *Id.*

The City asserts the tariff system violates the Iowa uniformity clauses in two ways. First, the City contends that because MidAmerican is not the only public utility servicing Coralville, the Coralville residents who are not serviced by MidAmerican will receive the benefit of the undergrounding without bearing its costs. Assuming this to be true, we nonetheless find no violation of equal protection.

The Iowa Constitution "requires 'uniform operation throughout the State', not uniformity of consequences resulting from such operation." *Cook v. Dewey*, 233 Iowa 516, 519, 10 N.W.2d 8, 10 (1943). The City's uniformity clause claim is in substance a misplaced argument for

---

[3]The City urges us in this case to adopt an equal protection analysis different from the one routinely followed under the federal Equal Protection Clause. *See Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 5. Specifically, the City urges that the uniformity provisions in the Iowa Constitution require that all Iowa laws be *geographically* uniform, applying to all parts of the state. The City does not explain how its proposed "geographic uniformity" standard differs from the equal protection analysis undertaken in our previous decisions in which we discussed the Iowa uniformity clauses. *See Cook v. Dewey*, 233 Iowa 516, 519, 10 N.W.2d 8, 10 (1943) (noting the Iowa Constitution "requires 'uniform operation throughout the State', not uniformity of consequences resulting from such operation"). We therefore decline in this case to depart from our long-standing uniformity clause jurisprudence.

uniformity of consequences rather than uniformity of operation. Chapter 476 and the regulations implementing it provide a uniform system for filing and approval of tariffs setting rates based on costs of the individual public utility. Iowa Code § 476.4 ("Every public utility shall file with the board tariffs showing the rates and charges for its public utility services . . . ."); Iowa Admin. Code r. 199—20.10(2) (requiring that public utility rates "reasonably reflect the costs of providing electric service to the class"). All public utilities are required to file tariffs with the IUB reflecting the costs unique to their service area. Iowa Code § 476.4; Iowa Admin. Code r. 199—20.10(2); *see Fleur de Lis Motor Inns, Inc. v. Bair*, 301 N.W.2d 685, 689 (Iowa 1981) (holding amendments to local option hotel-motel tax statute that did not single out certain classes or entities and applied equally to all municipalities were valid under the uniformity clauses "even though when applied they incidentally affect some entities differently due to differing fact situations"). Dissimilar treatment of persons dissimilarly situated does not offend equal protection. *In re Det. of Hennings*, 744 N.W.2d 333, 339 (Iowa 2008). Citizens serviced by different public utilities are not similarly situated, and consequently the City cannot sustain a constitutional challenge based on the fact that customers of different utilities may pay different rates.

Finally, the City asserts the tariff system violates the uniformity clauses because other regulated, investor-owned utilities operating in the same area allegedly do not have tariffs on file permitting them to recover from their customers the costs of undergrounding. We need not engage in a constitutional analysis of this claim because the record does not support the factual contention upon which it purports to be based. The only other regulated, investor-owned utility mentioned in the record, Interstate Power and Light Company, has a similar tariff on file with the

IUB in which the utility reserves the right to recover from customers the costs of equipment relocation. The district court correctly determined the tariff is not unconstitutional on its face or as applied by the IUB in this case.

### IV.    Conclusion.

We conclude MidAmerican is not precluded from utilizing its valid tariff to recover from its Coralville customers the costs of relocating the company's equipment in the City's right-of-way. We affirm the IUB's determination that MidAmerican's cost-recovery tariff was a valid exercise of the board's authority which did not illegally infringe upon the City's home rule authority to control its right-of-way. Coralville's constitutional claims against the tariff are without merit.

**AFFIRMED.**

All justices concur except Baker, J., who takes no part.